**INDIANA DEPARTMENT OF STATE REVENUE, Donald H. Clark, Commissioner, Defendant-Appellant,**

**v.**

**INDIANA GAMMA GAMMA OF ALPHA TAU OMEGA, INCORPORATED, Plaintiff-Appellee.**

No. 1–1177A282.

Court of Appeals of Indiana, First District.

Aug. 28, 1979.

Rehearing Denied Oct. 17, 1979.

William M. Evans, G. Pearson Smith, Jr., Bose & Evans, Indianapolis, for defendant-appellant.

Charles B. Huppert, Huppert & Wilcox, Howard S. Wilcox, Jr., Indianapolis, for plaintiff-appellee.

LYBROOK, Judge.

Defendant-appellant Indiana Department of State Revenue (Department) appeals a judgment entered in Vigo Superior Court in favor of plaintiff-appellee Indiana Gamma Gamma of Alpha Tau Omega, Incorporated (ATO).

ATO is organized and operated as a not-for-profit corporation which owns and operates a college fraternity house and acts as the legal entity of the fraternity chapter, called Indiana Gamma Gamma of Alpha Tau Omega and located at Rose-Hulman Institute of Technology (Rose-Hulman), a not-for-profit educational institution of higher learning.

In July, 1972, ATO brought suit against the Department for a refund of taxes and for a declaratory judgment, alleging that:

1) ATO had been compelled to make Indiana gross income tax payments and was wrongfully denied a refund, and it is wholly exempt from such tax under Ind.Code 6–2–1–7.

2) Certain of ATO's purchases are exempt from the Indiana gross retail tax and use tax under Ind.Code 6–2–1–39.[1]

3) ATO was entitled to a refund of Indiana gross retail tax which it had paid to the State on food sold to Rose-Hulman students but which it had not collected from the students, and these food transactions are exempt from the gross retail tax under Ind.Code 6–2–1–39.

ATO argued that it is organized and operated exclusively for educational purposes

---

1. Ind.Code 6–2–1–43, exemptions from the use tax, incorporates the exemption categories of Ind.Code 6–2–1–39, gross retail tax exemptions. Therefore, all references to and discussions of the gross retail tax in this opinion apply with equal force to the use tax. *See* Ind.Code 6–2–1–41 and 43.

and is, therefore, wholly exempt from the gross income tax. ATO claimed that it is not a predominantly social organization and, hence, certain of its purchases are exempt from the gross retail tax. Finally, ATO maintained that the meals it furnishes to Rose-Hulman students are exempt from the gross retail tax under the statute that exempts the furnishing of food by non-profit colleges to their students.[2]

The Department contended that ATO is a social organization and, therefore, is only partially exempt from the gross income tax, and is not exempt from the gross retail tax on personal property purchased for its own use and consumption. Finally, the Department argued that the gross retail tax exemption for food furnished by non-profit colleges to their students does not apply to food furnished by fraternities.

This cause was tried to the court and, in response to the Department's pretrial request, the trial court entered special findings under Ind.Rules of Procedure, Trial Rule 52(A), accompanied by the following judgment:

"IT IS HEREBY ORDERED, ADJUDGED AND DECREED by the Court, as follows, to-wit:

1. That Plaintiff, Indiana Gamma Gamma of Alpha Tau Omega, Inc., is hereby exempt from paying Indiana Gross Income Tax under the provisions of I.C. § 6–2–1–7(i)(1).

2. That Plaintiff, Indiana Gamma Gamma of Alpha Tau Omega, Inc., is hereby exempt from paying Indiana Sales and Use Tax on its purchase under the provisions of I.C. § 6–2–1–39(b)(8).

3. That Plaintiff, Indiana Gamma Gamma of Alpha Tau Omega, Inc., is hereby exempt from collecting and paying over to the Defendant, Indiana Department of State Revenue, sales tax and use tax under the provisions of I.C. § 6–2–1–39(b)(7) for food said Plaintiff sells or furnishes to students in attendance at the college where it is chartered

and affiliated, namely, Rose-Hulman Institute of Technology.

4. That the Plaintiff, Indiana Gamma Gamma of Alpha Tau Omega, Inc., recover from the Defendant, Indiana Department of State Revenue, the aggregate sum of Two Thousand Nine Hundred Sixty-Five Dollars and Seventy-Five Cents ($2,965.76) together with interest and costs of this action.

5. That students in attendance at Rose-Hulman Institute of Technology are exempt from paying sales and use tax for food and beverages purchased from, or furnished by, Plaintiff, Indiana Gamma Gamma of Alpha Tau Omega, Inc."

The Department initiated its appeal to this court and moved for a stay of execution pending the outcome. After oral argument, we entered an order suspending the relief granted by the judgment and staying any execution or other proceedings on the judgment until further order of this court.

The Department's appeal of the trial court's denial of its motion to correct errors raises these issues for review:

1) Did the trial court err in concluding that ATO is wholly exempt from the gross income tax because it failed to find, and could not have found, that ATO is exclusively educational?

2) Did the trial court err in concluding that certain ATO purchases are exempt from the gross retail tax because it failed to find, and could not have found, that ATO is not predominantly social, and because said conclusion conflicts with its findings of fact?

3) Did the trial court err in concluding ATO's food sales to students are exempt from the gross retail tax because it failed to find, and could not have found, that ATO is a college or university, and because its findings respecting control of ATO by Rose-Hulman are irrelevant and not supported by sufficient evidence?

---

2. This case, therefore, raises the full scope of the issue of the status of Greek letter fraternities under Chapter I of Article 2, Title 6, Gross Income, Sales and Use Tax, Ind.Code 6–2–1–1 through 6–2–1–53.

4) Was the declaratory relief granted by the trial court outside the scope of its subject matter jurisdiction?

We reverse.

■ We must first address the Department's contention that the trial court lacked subject matter jurisdiction to grant declaratory relief respecting ATO's liability for paying the gross income tax and for paying and collecting the gross retail tax.

In relation to ATO, the trial court's judgment contained five pronouncements: 1) that ATO is exempt from paying the gross income tax; 2) that ATO is to recover the gross income tax it has paid; 3) that ATO is exempt from paying the gross retail tax on some of its purchases; 4) that ATO is exempt from collecting the gross retail tax on its food sales to Rose-Hulman students; and 5) that ATO is to recover the amount it has paid to the Department as gross retail tax on these food sales.

The Department contends that the three grants of declaratory relief are contrary to law because they contravene the prescribed statutory method of challenging the imposition of these taxes. The Department argues that the prescribed method is to pay the tax and seek a refund under two applicable statutes.

In relation to the gross income tax, Ind. Code 6–2–1–19 states, in part:

"(a) *If any person considers that he has paid to the department* for any year *an amount which is in excess of the amount legally due from him* for that year under the terms of this act [6–2–1–1—6–2–1–53], *he may apply to the department, by petition* in writing, at any time within three [3] years after the payment for the annual period for which such alleged overpayment has been made, for a correction of the amount so paid by him to the department, and *for a refund* of the amount which he claims has been illegally collected and paid. In such petition, he *shall set forth the amount which he claims* should be refunded, and the reasons for such claim. The department shall promptly consider such petition, and

may grant such refund in whole or in part, or may wholly deny the same. If denied in whole or in part, the petitioner shall be forthwith notified of such action of the department, and of its grounds for such denial. The department may in its discretion, grant the petitioner a further hearing with respect to such petition. *Any person improperly charged with any tax provided for under the terms of this act, and required to pay the same, may recover any amount thus improperly collected,* together with interest, *in a civil action or suit* against the department in the circuit or superior court of the county of his residence or business location and if he has no such residence or business location, then in the Marion circuit or superior court. *The state hereby consents to such suits in said courts and no others and said courts are hereby granted exclusive jurisdiction of said suits:*

* * * * * *

(d) *No injunction to restrain or delay the collection of any tax claimed to be due under the provisions of this act shall be issued by any court, but in all cases in which, for any reason, it be claimed that any such tax about to be collected is wrongful or illegal in whole or in part, the remedy, except as otherwise expressly provided in this act, shall be by payment and action to recover such tax as provided in this section.*" (Emphasis added.)

Ind.Code 6–2–1–51 makes the above language applicable to the gross retail tax as follows:

"(c) The state gross retail tax and the use tax shall not be subject to the exemptions allowed by section 5[6–2–1–6] of this act. All other provisions of this act in respect to the gross income tax relative to the filing of returns, the auditing of returns, investigation, determination, notification, assessment and collection of tax liability, examination of taxpayer's books and records, legal proceedings, court actions, remedies, privileges and relief available to the department and to the taxpayer, statutes of limitation, hearings, assessments, refunds, remittances,

imposing penalties and interest, keeping and preservation of records by the department, confidential treatment of taxpayers' returns, duties of secretary of state and treasurer of state, the administration of the act, definitions, validity and separability of provisions not in conflict or inconsistent with the specific provisions of this act in respect to the state gross retail tax and the use tax, shall be applicable to the imposition and collection of such taxes and the administration of such taxes by the department: Provided, however, That refund shall not be made to any retail merchant of any amount of such taxes collected by the retail merchant from a purchaser and not refunded or reimbursed by the retail merchant to such purchaser: Provided, further, That any such purchaser shall have the right to apply for and receive refund of any amount of such taxes erroneously or illegally collected from or paid by him and remitted to the department and not refunded or reimbursed to him by the retail merchant, subject to all other requirements, limitations and restrictions applicable under the provisions of this act to the refunding of gross income tax to or the recovery of gross income tax by a taxpayer."

The emphasized language in Ind.Code 6–2–1–19, *supra*, has been uniformly interpreted by the courts to be an explicit expression of the intent of the legislature that a taxpayer's sole and exclusive remedy, whether requesting a refund or questioning the legality of the imposition of a tax, is the statutory remedy provided by that section. *Marhoefer Pkg. Co., Inc. v. Ind. Dept. of State Rev.*, (1973) 157 Ind.App. 505, 301 N.E.2d 209; *State ex rel. Ind. Dept. of Rev. v. Marion Circuit Court,* (1970) 255 Ind. 501, 265 N.E.2d 241. Consequently, the trial court was without subject matter jurisdiction to grant declaratory relief as to the status of ATO as a taxpayer.

We are faced with a different issue, however, in relation to the trial court's declaration that ATO is exempt from collecting the gross retail tax on its food sales. In *Mathis v. Cooperative Vendors, Inc.,* (1976) Ind.App., 354 N.E.2d 269, Cooperative Vendors, Inc. (Cooperative), a retail merchant, refused to collect and pay to the Department the gross retail tax on the cigarettes it sold, claiming an exemption by virtue of the Cigarette Tax Act of 1947. After several years, the Department sent Cooperative a notice of assessment under Ind.Code 6–2–1–17 and, according to the provisions of that statute, Cooperative filed a protest, an administrative hearing was held, and the protest was denied.[3] Cooperative sought and received both declaratory and injunctive relief.

---

**3.** Ind.Code 6–2–1–17, in part:

"(a) If the department discovers from the examination of any return, or otherwise, that the gross income of any taxpayer, or any portion thereof, has not been properly reported, or that proper tax computation and assessment has [not] been made, it may at any time within three [3] years after the time when the annual return covering such gross income was filed, issue to the taxpayer a notice of proposed assessment, by certified mail, and in such notice offer to the taxpayer an opportunity to present orally, or in writing to the department or its authorized agents, his objections to the proposed assessment. If no protest or objection is made by the taxpayer within thirty [30] days after the date of mailing such notice, or if, after hearing, or after taxpayer's failure to appear for hearing as scheduled, his protests and objections or any part thereof are denied, the department shall assess the gross income tax of such taxpayer, or any portion thereof which is found to be due and unpaid, and shall make demand on such taxpayer for the amount of the tax and interest and penalties, if any so assessed and the amount thereof shall be payable within ten [10] days from the date of mailing such demand. An annual return filed on or before the last day for filing an annual return shall be considered as having been filed on such last day. The limitation of three [3] years shall apply only to the issuance of the notice of proposed assessment and shall not apply to subsequent assessment of tax nor shall it apply in any case involving fraudulent returns nor in a case where a person failed to file a return for any tax period provided for in this chapter. Unsigned or blank returns shall not be considered as returns filed. The provisions of this act [6–2–1–1—6–2–1–53], with respect to revision and appeal shall also apply to any tax assessed under the provisions of this section."

This court said that the trial court was correct in assuming jurisdiction and in granting the requested relief because, under Ind.Code 6–2–1–37,[4] Cooperative would be acting as a collecting agent for the state, was thus not a "person" or "taxpayer" within the legislative intent of Ind.Code 6–2–1–19, *supra*, and was therefore not restricted to the statutory remedy. *See also State v. Indianapolis Airport Authority*, (1977) Ind.App., 362 N.E.2d 200. We held that in the circumstances of that case where an assessment had been made under Ind.Code 6–2–1–17, *supra*, Cooperative was entitled to declaratory relief.

Ind.Code 6–2–1–17 sets into operation a chain of administrative proceedings which, under the statute, ends with the denial of the taxpayer's protest. We recognized that due process and the separation of powers doctrine required that judicial review of administrative decisions be available, and that the Department's denial of the protest was a final administrative order judicially reviewable for illegality, fraud or abuse of discretion in an action for declaratory relief.

The case at bar is different in two fundamental aspects. First, the Department did not initiate Ind.Code 6–2–1–17 proceedings against ATO. Second, ATO voluntarily paid, out of its own funds, an amount equal to the tax the Department contended ATO should have collected from its students; ATO then filed a claim for a refund with the Department pursuant to Ind.Code 6–2–1–19(a), *supra*, and Ind.Code 6–2–1–51(c), *supra*. The Department denied the claim and ATO brought suit for a refund. By its own actions, ATO has brought itself within the category of "person" or "taxpayer" under the provisions of Ind.Code 6–2–1–19 and is held to the exclusive judicial remedy afforded by that statute, an action for a refund.

That the legislature anticipated this result is demonstrated by the following language from Ind.Code 6–2–1–51 which, it must be remembered, expressly incorporates the provisions of Ind.Code 6–2–1–19:

"Provided, however, That refund shall not be made to any retail merchant of any amount of such taxes collected by the retail merchant from a purchaser and not refunded or reimbursed by the retail merchant to such purchaser."

By implication, the statute provides for refunds to merchants under all other circumstances including the circumstances in the case at bar where the retail merchant has paid the amount alleged due the Department from his own funds.

We hold, therefore, that the trial court was without jurisdiction to grant declaratory relief in relation to any of the three statutory sections, and those parts of the judgment which attempt to grant such relief are hereby vacated.

We next proceed to a review on the merits of those parts of the trial court's judgment which grant relief under Ind.Code 6–2–1–19, *supra*, by ordering that ATO is to recover funds it has paid the Department as gross income tax and gross retail tax on its food sales to Rose-Hulman students.

The Department's allegations of error fall into two categories: 1) that the trial court's findings of fact are insufficient to support or are contradictory to its judgment; and 2) that the judgment is contrary to law because it is based on erroneous interpretations of the applicable statutes. We find it unnecessary to address the first category of alleged error because we reverse on the second. We find the trial court's judgment to be based on an erroneous interpretation of Ind.Code 6–2–1–1 *et seq.* as these statutes apply to the income and food sales of fraternities.

## I. GROSS INCOME TAX

■ The contested portions of Ind.Code 6–2–1–7, the statute which creates exceptions from gross income taxable under Ind. Code 6–2–1–1 *et seq.*, are as follows:

retail merchant, who shall collect the tax as agent for the state, at the rate fixed herein."

---

4. Ind.Code 6–2–1–37(b)(8) includes this language in reference to the gross retail tax:

"Such tax shall be borne by the purchaser and shall be paid by the purchaser to the

*"There shall be excepted from the gross income taxable under this chapter:*
* * *

(i)(1) *Amounts received by* institutions, trusts, groups, united funds and their affiliated agencies, *organizations and not-for-profit corporations* and cemetery associations *organized and operated exclusively for* religious, charitable, scientific, literary, *educational* and/or civic *purposes*, no part of the gross income of which is used for the private benefit or gain of any member, trustee, shareholder, employee or associate thereof; provided that the term 'private benefit or gain' shall not include reasonable compensation paid to employees for work or services actually performed.

(2) *Amounts received by groups, organizations and not-for-profit corporations organized and operated for fraternal or social purposes,* or as business leagues or associations, and not for the private benefit or gain of any member trustee, shareholder, employee or associate thereof, *as contributions, tuition fees, initiation fees, membership fees and/or earnings on or receipts from the sale of intangible property*; provided that the term 'private benefit or gain' shall not include reasonable compensation paid to employees for work or services actually performed; *Provided further, That the term 'membership fees' shall not include payments for which a member receives specific services or tangible personal property, and the term 'contributions' shall not include payments for which the payor does or may expect to receive services or tangible personal property."* (Emphasis added.)

The Department contends that ATO falls within the emphasized portion of subdivision (i)(2) and can exclude from its taxable gross income only "contributions, tuition fees, initiation fees, membership fees and/or earnings on or receipts from the sale of intangible property." ATO argues that it falls within the emphasized portion of subdivision (i)(1) and is wholly exempt from paying the gross income tax.

The statute itself contains no definitions of the words and phrases at issue and no cases can be found which interpret subdivisions (i)(1) and (2). Therefore, we must avail ourselves of the standard rules of statutory construction.

Ind.Code 1–1–4–1 provides, in part:

"The construction of all statutes of this state shall be by the following rules, unless such construction be plainly repugnant to the intent of the legislature or of [sic] the context of the same statute:

First. Words and phrases shall be taken in their plain, or ordinary and usual, sense. But technical words and phrases having a peculiar and appropriate meaning in law shall be understood according to their technical import."

ATO argues that the evidence supports a finding that it has an "educational purpose" within the sense of the word conveyed by the testimony of Dr. John A. Logan, past president of Rose-Hulman:

"Q. Now, with regard to the activities of the fraternity, are there any specific activities of the fraternity which you consider helping the student as far as his education is concerned?

A. Yes, I think there are several. We feel that *for some students* the opportunity to study with others, the camaraderis [sic] that a fraternity provides, the fact that students are interested in each other and help each other, I think, makes *for certain students* a better study atmosphere; we feel that it provides social opportunities which are normally more difficult in a non-fraternity situation, social graces, opportunity to meet girls, opportunity to meet other people, opportunity to work with people; we felt that there were a wide variety of *benefits for certain young men* in belonging to a fraternity." (Emphasis added.)

Yet this court has rejected such a broad definition of "educational purpose" in a case which dealt with the property tax exemption but which spoke to the issue of tax

exemptions in general, *State Bd. of Tax Com'rs v. Ft. Wayne Sport Club, Inc.*, (1970) 147 Ind.App. 129, at 139, 258 N.E.2d 874, at 881:

"This Court well recognizes that matters of education are not restricted to academic curricula or to ivy covered halls. As accurately noted in *In re Petty* (1950), 241 Iowa 506, 41 N.W.2d 672 at 675:

'In the case of *New Britain Trust Co. v. Stoddard*, 120 Conn. 123, 179 A. 642, 643, education is defined as a broad and comprehensive term with a variable and indefinite meaning, and in its broadest significance comprehends the acquisition of all knowledge tending to develop and train the individual. " 'Education' is a broad term, and includes all knowledge, if we take it in its full, and not in its legal or popular, sense. Whatever we learn by observation, by conversation, or by other means, away from what has been implanted by nature, is education. In fact, everything not known intuitively and instinctively is education, \* \* ." *Cook v. State*, 90 Tenn. 407, 16 S.W. 471, 472, 13 L.R.A. 183. Education has also been defined in the case of *Mount Herman Boys' School v. Town of Gill*, 145 Mass. 139, 146, 13 N.E. 354, 357, as "a broad and comprehensive term. It has been defined as 'the process of developing and training the powers and capabilities of human beings.' To educate, according to one of Webster's definitions, is 'to prepare and fit for any calling or business, or for activity and usefulness in life.' Education may be particularly directed to either the mental, moral, or physical powers and faculties, but in its broadest and its best sense it relates to them all. \* \* \* " '

Thus, it can be said that each family residence is ideally a place of true education concerning matters of morals, esthetics, the intellect, physical well being, and in fact, all facets of human experience and capacity. No rational contention, however, can be made that such private homes are thereby made tax exempt.

*We must necessarily adopt a more restrictive definition of 'educational purposes', as concerns tax exemptions, than may be appropriate within other frames of reference. In our view, the well-established and obvious purpose for legislative conferral of tax exemptions requires a showing of some public benefit as a condition precedent to the granting of such exemption. See State, on Inf. of Wear v. Businessmen's Athletic Club* (1914), 178 Mo.App. 548, 163 S.W. 901 at 908." (Emphasis added.)

In *State Bd. of Tax Com'rs v. Professional Photographers of America, Inc.*, (1971) 148 Ind.App. 601, 268 N.E.2d 617, this court found that a school set up by a not-for-profit corporation for instruction in photography and in the operation of photographic businesses was operated for an "educational purpose" under the property tax exemption but said, at 148 Ind.App. 610, 268 N.E.2d at 623:

"This case may be near the outer limits of the scope of [the] 'educational' exemption as set forth in the statute."

The record shows that Alpha Tau Omega was founded on a national level for the "advancement of brotherly feelings and morality." In its brief to this court, ATO describes its role as providing fraternity members with "an education in living together, dealing with each other, managing business, providing social opportunities and social graces and opportunities to work with people." Rose-Hulman's official publications refer to Greek letter fraternities such as ATO as "social fraternities." According to ATO's brief, approximately 98 percent of ATO's expenditures for the fiscal years ending in 1974 and 1975 were for housing, food service, social activities, membership campaigns, national dues, public relations and homecoming.

We fail to detect from the record any public benefit conferred by ATO which would support the tax exemption ATO

seeks. It clearly appears that the primary purposes of ATO are not educational.[5]

In determining what the legislature intended in relation to the status of Greek letter fraternities under Ind.Code 6–2–1–7(i)(1) and (2), *supra*, it is instructive to look at the status of these organizations under the property tax statutes. Ind.Code 6–1.1–10–16 exempts from property taxation land and buildings used for educational, literary, scientific, religious or charitable purposes. Ind.Code 6–1.1–10–24 exempts, within limits, tangible property owned by fraternities and sororities "connected with, and under the supervision of, a college, university, or other educational institution." Clearly, if the legislature viewed fraternities as organizations with educational purposes, their property would be exempt under Ind.Code 6–1.1–10–16, and Ind.Code 6–1.1–10–24 would be superfluous. We are led to conclude that the legislature does not use fraternities as having educational purposes.

These property tax statutes also indicate that, if the legislature intended to exempt fraternities from the gross income tax, it was fully aware of how to accomplish this end with specific, unambiguous language. Yet the legislature has not so acted. To the contrary, in Ind.Code 6–2–1–1(a), the legislature expressly includes within the term "person" as used in Ind.Code 6–2–1–1 *et seq.*, a lengthy list of specifically enumerated entities including "fraternity."

In Ind.Code 6–2–1–10, the legislature, with certain exceptions not relevant here, has imposed the gross income tax on:

"the gross income received by the state of Indiana, its agencies and instrumentalities, all counties, townships and municipal corporations, their respective agencies and instrumentalities, and all other state governmental entities and subdivisions, including state colleges and universities, received in the performance of private or proprietary activities or business."

It would seem an anomalous result for the legislature to tax such income of its own

instrumentalities, including colleges and universities, while exempting the same income of social fraternities. We do not believe the legislature intended that result.

In *State, Dept. of Rev. Gross I. T. Div. v. Bethel San., Inc.*, (1975) 165 Ind.App. 421, 332 N.E.2d 808, at 810, this court, in construing Ind.Code 6–2–1–7(i)(3), said:

"[W]hile the tax laws in general are strictly construed against the State, *Gross Income Tax Division v. L. S. Ayres & Co.* (1954), 233 Ind. 194, 118 N.E.2d 480; *Gross Income Tax Division v. Surface Combustion Corp.* (1953), 232 Ind. 100, 111 N.E.2d 50, there is an exception to the rule when an exemption is involved. All exemption statutes must be strictly construed in favor of the tax and against the one seeking the exemption. *Indiana Dept. of State Revenue v. Boswell Oil Co.* (1971), 148 Ind.App. 569, 268 N.E.2d 303; *Storen v. Jasper County Farm Bureau Co-op. Ass'n* (1936), 103 Ind.App. 77, 2 N.E.2d 432."

We hold that the legislature intended Ind.Code 6–2–1–7(i)(2), not Ind.Code 6–2–1–7(i)(1), to apply to ATO. That part of the trial court's judgment ordering the Department to refund the gross income tax paid by ATO is hereby reversed.

## II. GROSS RETAIL TAX ON FOOD SALES TO STUDENTS

■ Under the trial court's judgment in relation to ATO's food sales to Rose-Hulman students, the relevant portion of the gross retail tax exemption statute, Ind.Code 6–2–1–39, is as follows:

"(b) *Nor shall the state gross retail tax apply to* any of the following transactions:

(7) The furnishing of school meals to school children and school employees on school premises in all schools in grades one [1] through twelve [12]; *the furnishing of food by colleges and universities, not operated for private profit, to stu-*

---

5. This comports with the majority rule in other jurisdictions. *See* 84 C.J.S. *Taxation* § 294 (1954); 66 A.L.R.2d 904.

*dents in attendance* at such colleges and universities." (Emphasis added.)

ATO argues that the trial court's finding that ATO is exempt under the above language from collecting the gross retail tax on its food sales to students is necessary to preserve the constitutionality of the exemption under the privileges and immunities clause of the Indiana Constitution [6] and the equal protection clause of the United States Constitution,[7] and that such an exemption is within the legislative intent of the statute because of the court's finding that ATO is controlled by Rose-Hulman.

The Department argues that the statute is not constitutionally infirm if construed to disallow ATO an exemption, and that any control which Rose-Hulman might exert over ATO is irrelevant to a proper construction of the statute.

We must first determine what the legislature intended by the phrase "colleges and universities." The gross retail tax statute does not define these terms nor does any other statute. According to the statutory construction guidelines of Ind.Code 1–1–4–1, *supra*, when words are not technical ones with peculiar meanings in the law, we must look to their plain, ordinary and usual sense unless that would be repugnant to the intent of the legislature.

Black's Law Dictionary, at 329 (rev. 4th ed. 1968), defines a "college", as commonly used, as:

"an institution of learning (usually incorporated) which offers instruction in the liberal arts and humanities and in scientific branches, but not in the technical arts or those studies preparatory to admission to the professions,"

and says that the term also applies to:

"all kinds of institutions from universities, or departments thereof to 'business colleges,' 'barber colleges,' etc."

At 1704, Black's defines "university" as:

"an institution of higher learning, consisting of an assemblage of colleges united under one corporate organization and government, affording instruction in the arts and sciences and the learned professions, and conferring degrees."

In order for us to conclude that the legislature intended to depart from these accepted usages to such an extent as to include fraternities within the two terms, we would need strong evidence of such intent. The trial court found that Rose-Hulman "utilizes" ATO as an "integral part of the educational institution operated by Rose-Hulman," and that ATO can only exist "as incorporated, organized and operated, with the permission and under the control of Rose-Hulman." Do these findings lead to the conclusion that fraternities were intended by the legislature to be within the phrase "colleges and universities"?

Again, property tax and other statutes are instructive. The legislature has provided exemptions for property owned by state-supported institutions of higher education;[8] for real and personal property owned by private persons, towns, cities, townships and counties and used for educational purposes;[9] and for some tangible property owned by manual labor schools, technical high schools, trade schools or colleges incorporated within the state.[10] In addition, as noted earlier, the legislature has specifically acted to exempt limited amounts of tangible property owned by fraternities "connected with, and under the supervision of, a college, university, or other educational institution."[11]

From these statutes, we can infer that the legislature has recognized the close relationship which exists between a Greek letter fraternity and the educational institution whose students are the fraternity's members, but has failed to see this relationship as bringing fraternities within the

---

**6.** Art. I, § 23.

**7.** Fourteenth Amendment, § 1.

**8.** Ind.Code 20–12–6–11, 20–12–7–5 and 20–12–8–5.

**9.** Ind.Code 6–1.1–10–16.

**10.** Ind.Code 6–1.1–10–20.

**11.** Ind.Code 6–1.1–10–24.

phrase "colleges and universities." Fraternities are seen as distinct entities requiring a specific exemption.

We hold, therefore, that the legislature did not intend the exemption of Ind.Code 6–2–1–39(b)(7), *supra*, to apply to ATO's food sales.

■ We find it unnecessary to address the issue of whether that exemption as here interpreted violates Art. I, § 23 of the Indiana Constitution and the Fourteenth Amendment, § 1 of the United States Constitution. Ordinarily, a question as to the constitutionality of a statute on the ground that it denies rights and privileges by discriminating between classes of people may not be raised by one not belonging to the class alleged to be discriminated against. *Garcia v. Slabaugh*, (1974) 159 Ind.App. 631, 308 N.E.2d 714; *Cheaney v. State*, (1972) 259 Ind. 138, 285 N.E.2d 265; *Knight & Jillson Co. v. Miller*, (1909) 172 Ind. 27, 87 N.E. 823; *Schmidt v. City of Indianapolis*, (1907) 168 Ind. 631, 80 N.E. 632; *Premier-Pabst Co. v. Grosscup*, (1936) 298 U.S. 226, 56 S.Ct. 754, 80 L.Ed. 1155; 16 C.J.S. *Constitutional Law* § 88 (1956).

■ In Indiana, the standing requirement is stated in terms of the requirement of a party to show injury. *Board of Com'rs v. Kokomo City Plan Com'n*, (1975) 263 Ind. 282, 330 N.E.2d 92. If ATO suffered any injury under this exemption, the record does not so indicate. It would seem that any injury to ATO would be derivative of injury suffered by the students it serves. These students possess the capacity to challenge the constitutionality of the statute in their own right.[12] Consequently, ATO lacks the requisite standing to make this challenge. *Medical Licensing Board v. Indiana State Chiropractic Assn.*, (1978) Ind.App., 373 N.E.2d 1114.

Finally, we have examined the entire complex structure of the gross retail tax scheme to determine whether ATO's food sales are otherwise exempt. We conclude that they are not. Our analysis proceeded as follows.

Ind.Code 6–2–1–37, the first code section dealing specifically with the gross retail tax, imposes the excise tax on:

"transactions of retail merchants constituting selling at retail, as defined in IC 1971, 6–2–1–38, subject to the exceptions and exemptions provided in IC 1971, 6–2–1–39."

Thus, the key to deciding whether a transaction must be taxed is in the meanings the legislature has ascribed to the phrases "retail merchant" and "selling at retail."

Since the gross retail tax is imposed as part of the total statutory scheme creating the gross income, gross retail and use taxes, we begin constructing the definition of "retail merchant" with Ind.Code 6–2–1–1 which provides definitions that apply throughout the entire statutory scheme. Ind.Code 6–2–1–1(j) defines "retail merchant" as:

"only a person regularly and occupationally engaged in purchasing tangible personal property and providing the same to his customer either as purchased or after having been modified, and either alone or in conjunction with the rendition of personal services at a fixed and established place of business."

Ind.Code 6–2–1–38(j), in relation to the gross retail tax, pares down the above definition by the following language:

"The existence of a 'fixed and established place of business' specified in section 1(j) of this chapter [6–2–1–1(j)] shall not be a requisite to constitute a person as a retail merchant."

The resulting definition of "retail merchant" under the gross retail tax statutes, therefore, is:

"only a person regularly and occupationally engaged in purchasing tangible per-

---

**12.** When the complaint was originally filed in this cause, ATO was joined by another plaintiff, a Rose-Hulman student. That plaintiff later moved for a dismissal without prejudice. The motion was granted before trial. Rose-Hulman and the student also moved to have the suit denominated a class action under Ind.Rules of Procedure, Trial Rule 23, and that was denied. The denial of the motion was not appealed.

sonal property and providing the same to his customer either as purchased or after having been modified, and either alone or in conjunction with the rendition of personal services[.]"

To define the second key phrase, "selling at retail," we begin, as directed by Ind.Code 6–2–1–37, with Ind.Code 6–2–1–38(a) which defines "selling at retail" as:

"Transactions of retail merchants constituting selling at retail shall include all transactions defined as 'selling at retail' in IC [1971], 6–2–1–1(k), and all transactions defined as wholesale sales in IC [1971], 6–2–1–3(a) (except subdivision 4),[13] and all transactions constituting selling at retail under the provisions of this section [14]."

Relevant to our purposes are the following parts of the definition of "selling at retail" in Ind.Code 6–2–1–1(k):

"[O]nly a transaction by a 'retail merchant' by which the ownership of tangible personal property is transferred, conditionally or otherwise, for a consideration, when such transfer is made in the ordinary course of the transferor's regularly conducted business and when such property is acquired by the transferor for the purpose of resale and is acquired by the transferee for any purpose other than the purposes designated in subsection (a) of section 3 [6–2–1–3(a)] of this chapter."

Before we address the question of whether ATO's food sales fall within the resulting boundaries of the phrase "transactions of retail merchants constituting selling at retail" in Ind.Code 6–2–1–37, we proceed to the provisions of Ind.Code 6–2–1–39(a) and (b) to see if the legislature has expressly exempted such food sales.

Subsection (a) expressly denies, for gross retail tax purposes, any effect to the gross income tax exemption under which ATO falls, Ind.Code 6–2–1–7(i)(2), but only to the extent that the gross income there exempted represents gross income from "transactions constituting selling at retail." The gross income of ATO exempted by Ind.Code 6–2–1–7(i)(2) is only the income from "contributions, tuition fees, initiation fees, membership fees and/or earnings on or receipts from the sale of intangible property." Since, under the provisions of that statute, "membership fees" and "contributions" do not include payments for which a member or payor receives or expects to receive specific services or tangible personal property, Ind.Code 6–2–1–7(i)(2) does not exempt the food sales income from the gross income tax. It must necessarily follow that the language of Ind.Code 6–2–1–39(a) does not, therefore, result in the inclusion of those sales under the gross retail tax.

Subsection (b) lists 24 specific exclusions from the gross retail tax. We now look to see if any are relevant to the issue at hand, having earlier rejected the trial court's interpretation of subdivision (7) as exempting ATO's food sales.

Subdivision (8) of subsection (b) is the only exemption addressed to the sales activities of the organizations given special gross income tax status under Ind.Code 6–2–1–7(i). Given our earlier decision that the legislature intended that ATO be classified as a social organization under Ind.Code 6–2–1–7(i)(2), we must now decide what effect, if any, subdivision (8) has on the gross retail tax status of the food sales in question.

---

**13.** Ind.Code 6–2–1–1(k), 6–2–1–3(a) and 6–2–1–38(a) create a complex status under the taxing scheme for what are commonly thought of as "wholesale" sales. Ind.Code 6–2–1–3(a) sets forth seven categories of such sales, the gross income from which is taxed at a special rate. The general, definitional Ind.Code 6–2–1–1(k) excludes the income from all such sales from "selling at retail" but the more specific Ind.Code 6–2–1–38(a) results in the inclusion of six of the seven categories for gross retail tax purposes. None of this is relevant here, how-

ever, because the student purchases of food from ATO are clearly retail purchases for immediate consumption.

**14.** The other provisions of Ind.Code 6–2–1–38 expressly include under the gross retail tax such transactions as the renting of rooms for less than 30 days, some sales of energy and communication services, some sales by governmental entities in their proprietary activities, and some auction sales, none of which are relevant here.

The first two paragraphs of subdivision (8) expressly exempt from the gross retail tax:

"[1] Sales by any organization named or described in subsection (i) of section 7 [6–2–1–7] of this chapter of tangible personal property carried on for a total of not more than thirty [30] days in any calendar year and engaged in for the purpose of raising money for carrying on a not-for-profit purpose for which such organization is granted exemption from the gross income tax. [2] Sales by any organization named or described in subsection (i) of section 7 [6–2–1–7] of this chapter, except organizations operated predominantly for social purposes, of tangible personal property of a kind designed and intended primarily for the educational, cultural or religious purposes of such organization or for the improvement in the skill or professional qualifications of members of the organization for carrying on the work or practice of their trade, business or profession, and not used in carrying on a private or proprietary business. [3] However, this subsection shall not exempt the sale by any state or other accredited college or university of books, stationery, haberdashery, supplies and other property. [4] In addition, the exemption granted by this subsection shall be exclusive and shall not be deemed enlarged, modified or otherwise affected by any other provisions of this chapter.

Sales by any organization named or described in subsection (i) of section 7 [6–2–1–7] of this chapter, of food to persons who are confined in their homes due to age, sickness, or infirmity. However, this exemption applies only if a physician licensed to practice medicine in this state determines that this service is medically necessary and the food is delivered by the organization to the residences of the persons confined to their homes. Sales by any organization described in subsection (i) of section 7 [6–2–1–7] of this chapter

of food to persons who are patients in a hospital which is operated by the organization." [15]

The first three sentences of the first paragraph clearly do not apply to ATO's food sales, and the food sales covered by the second paragraph are not of the type at issue here.

The fourth sentence of the first paragraph is more troublesome. It contains what we determine to be the legislature's erroneous use of the word "subsection." As demonstrated in the first line of Ind.Code 6–2–1–39(b)(8), *supra*, the legislature denominates the alphabetical segments of each statutory section as "subsections," and, as demonstrated in Ind.Code 6–2–1–38(a), *supra*, the legislature denominates the numerical segments of each alphabetical subsection as "subdivisions." Given the placement of this sentence in the middle of Ind. Code 6–2–1–39(b)(8), it is inconceivable that the legislature was referring to subsection (b) rather than subdivision (8). We interpret the fourth sentence as applying only to subdivision (8). Its effect is to prevent us from enlarging, modifying or otherwise affecting the specific exemptions granted by subdivision (8) based on our interpretation of other provisions of the Gross Income, Sales and Use Tax Chapter. Its effect is not to cause the inclusion under the gross retail tax of sales that are not otherwise included.

█ Having concluded that nothing in Ind.Code 6–2–1–39 exempts the food sales from the gross retail tax, we are left with the original inquiry of whether these sales were ever included by Ind.Code 6–2–1–37 in the first instance. We have concluded that the phrase "transactions of retail merchants constituting selling at retail" is broad enough to require the application of the tax to the sales.

The sales constitute "selling at retail" as earlier defined. The ownership of tangible personal property is transferred for a con-

---

**15.** The third and final paragraph of subdivision (8) applies to sales *to* these organizations so is irrelevant here.

sideration in the ordinary course of ATO's regularly conducted business—the foodstuffs having been purchased by ATO for the purpose of resale, the prepared meals purchased by ATO members for immediate consumption.

ATO is a "retail merchant" as earlier defined. The fraternity is a "person" [16] regularly purchasing tangible personal property and providing it in modified form to its members in conjunction with the provision of lodging and other services and facilities.

That ATO is also "occupationally" engaged in this practice must be conceded because of the fact that ATO was organized and continues to operate solely to provide its services to its members. One of ATO's major "jobs" is to prepare meals for sale to its members, and this activity accounted for 43 percent of ATO's expenditures during the fiscal years ending in 1974 and 1975.

We cannot narrow the scope of the term "occupationally" to apply only to activities entered into for a profit because that clearly was not the legislature's intent. To do so could preclude any not-for-profit organization from falling within the term "retail merchant" and would create an exemption for all nonprofit sales activities by not-for-profit organizations in direct conflict with the legislative intent of Ind.Code 6–2–1–39(b)(8). It should be noted that the legislature created this tax as an excise tax on "gross" retail sales not on "gross profitable" retail sales or on net profits.

Faced with a similar problem in relation to the gross income tax in *Western Adjust. & Insp. Co. v. Gross Income Tax Div.*, (1957) 236 Ind. 639, 142 N.E.2d 630, our Supreme Court said, at 645, 142 N.E.2d at 633:

"The gross income tax is applicable regardless of any profit being involved. *Walgreen Co. v. Gross Income Tax Div.*, (1947), 225 Ind. 418, 75 N.E.2d 784, 1 A.L.R.2d 1014. A contrary interpretation would result in most non-profit transactions being tax-free. By extending and engrafting exemptions upon a gross tax,

it progressively becomes a net tax. We are not arguing that this would be more equitable or just—that is not within our province for decision. The taxing policy, and the basis upon which the tax is to be levied, as well as the exemptions applicable, is for the legislature to determine. *Department of Treasury of Indiana v. Crowder*, (1938), 214 Ind. 252, 15 N.E.2d 89.

We are in effect asked to extend the scope of exemptions of a broad gross income tax by an interpretation for which we can find no specific verbal basis in the Act."

The Supreme Court declined to so act in that case, and we decline here.

We do believe there is merit in the contentions that fraternity houses are "homes away from home" as are college and university dormitories and off-campus private housing, and that students who buy their meals at the fraternity houses where they reside should have the same tax status as those who eat at their dormitories or private residences. But as the Supreme Court recognized in *Western Adjust. & Insp. Co.*, *supra*, these are policy arguments more appropriately addressed to the legislature. If such result is achieved, it will have to be accomplished there.

We hold that ATO is not entitled to a refund of the gross retail tax it has paid on its food sales. That part of the trial court's judgment to the contrary is hereby reversed.

■ The remaining part of the trial court's judgment, that which declares Rose-Hulman students exempt from paying the gross retail tax on good purchased from ATO, is hereby vacated for two reasons. First, the students as taxpayers are limited to the relief provided by Ind.Code 6–2–1–19, *supra*, payment of the disputed taxes followed by administrative and judicial proceedings for a refund. *State ex rel. Ind. Dept. of Rev. v. Marion Circuit Ct., supra*; *Marhoefer Pkg. Co., Inc. v. Ind. Dept. of State Rev., supra*. Second, Rose-Hulman

**16.** Ind.Code 6–2–1–1(a).

students were not parties to this cause. A judgment cannot properly be rendered for or against one who is not a party to the action. *Kist v. Coughlin*, (1944) 222 Ind. 639, 57 N.E.2d 586; 17 I.L.E. *Judgments* § 13 (1959); 49 C.J.S. *Judgments* § 28 (1947).

Parts 1, 2, 3 and 5 of the trial court's judgment which grant declaratory relief are vacated. Part 4 which orders a refund to ATO is reversed. The cause is remanded to the trial court with the direction to enter judgment for the appellant.

Reversed.

LOWDERMILK, P. J., and ROBERTSON, J., concur.