## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 08 2016, 8:35 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Paul J. Wallace
Jones-Wallace, LLC
Evansville, Indiana

ATTORNEY FOR APPELLEES

Michael H. Hagedorn
Hagedorn Law Office
Tell City, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jeffrey M. Kaetzel, Marcia Kaetzel d/b/a J&M Construction,

*Appellants-Plaintiffs/Counter-defendants,*

v.

Donald L. Woods, II and Kori M. McBrayer Woods,

*Appellees-Defendants/Counter-plaintiffs.*

July 8, 2016

Court of Appeals Case No. 62A01-1507-CC-837

Appeal from the Perry Circuit Court.
The Honorable William E. Weikert, Special Judge.
Cause No. 62C01-1103-CC-127

**Friedlander, Senior Judge**

[1] Jeffrey M. Kaetzel and Marcia Kaetzel, doing business as J & M Construction, appeal after a bench trial from the trial court's order resolving their amended complaint against Donald L. Woods, II and Kori M. McBrayer Woods, and resolving the Woodses' counterclaims against the Kaetzels. The Woodses

cross-appeal contending that the trial court erred by entering judgment against them and in favor of non-parties Leroy Oeding and Glen Hassfurther, subcontractors of J & M Construction. We affirm in part, reverse in part, and remand with instructions.

[2] The Woodses own real estate located in Tell City, Indiana. On April 16, 2010, the Woodses and Jeffrey signed a document bearing the words "price sheet" prepared by J & M Construction, the Kaetzels' corporation, and listing the prices of various aspects of the construction of a new home on the Woodses' property. Appellees' App. p. 11. The agreement had several prices that were fixed, while other prices were dependent on factors not known to the parties at the time of the signing. This agreement was a two-page document on the second page of which a total price of $224,804.26 was typed, but $226,379.26 was written in the margin.[1] At some point, an additional page was added, but was neither signed nor dated. The additional page contained several items not priced on the initial two pages. Certain written plans, blueprints, and specifications also came into existence during the discussion by the parties.

[3] Jeffrey provided labor, materials, supplies, and services in the construction of the Woodses' home. He would submit invoices to them, and they would then make payments to the Kaetzels' business, J & M Construction. The Woodses had separate projects related to the home construction to be completed by

---

[1] If the total price of $224,804.26 is added to the line providing for additional allowances for tile floor and heat priced at $1,575, you arrive at the sum $226,379.26, the number handwritten in the margin. *Id.* at 63.

Jeffrey that were not priced in the two-page agreement. They also had separate projects related to the home construction that were not part of the agreement to be completed by Oeding and Hassfurther. Kaetzel had subcontracted with Oeding to complete the plumbing and heating and with Hassfurther to complete the masonry work, each aspects that were part of the two-page agreement.

[4] A dispute arose over the amount paid by the Woodses. On December 30, 2010, Jeffrey filed in the county recorder's office a sworn statement and notice of intention to hold a mechanic's lien against the Woodses' property. On March 25, 2011, Jeffrey, doing business as J & M Construction, filed a complaint against the Woodses for underpaying him by $93,993.39. The Woodses filed an answer and affirmative defenses to Jeffrey's complaint, and then on May 31, 2011 filed counterclaims against Jeffrey and J & M Construction, alleging breach of contract, fraud, and slander of title. In particular, the Woodses alleged that Jeffrey had been overpaid $79,635.16 beyond the contract price of $226,379.26 for construction of the new house.

[5] On August 8, 2011, the trial court entered an order granting the Woodses' motion for leave to deposit cash with the trial court clerk to be held in trust until judgment of the court, and for the release of the mechanic's lien against the Woodses' property. They deposited the money on September 29, 2011. Thereafter, the Woodses filed amended counterclaims against Jeffrey and J & M Construction, adding Marcia as a counter-defendant and additionally alleging construction defects and breach of express and implied warranties.

[6] The Kaetzels entered a general denial to the Woodses' counterclaims. They then filed an amended complaint on March 4, 2014, alleging that the parties signed an agreement on April 16, 2010, and attaching the agreement to the complaint. The Woodses filed an answer and affirmative defenses to the amended complaint, and while admitting the existence and signing of the agreement, denied the authenticity of the document attached to the amended complaint.

[7] The bench trial began on July 28, 2014, and continued over the course of several days before its completion on November 6, 2014. At the beginning of the second day of trial, Jeffrey filed a motion with the trial court seeking to amend the complaint to conform to the evidence by adding a claim alleging breach of contract, citing to the April 16, 2010 agreement. The motion was filed in open court, but does not appear to have been ruled on by the trial court. After the presentation of the evidence had concluded, the trial court took the matter under advisement and entered findings of fact and conclusions thereon.

[8] The trial court found that there was never a meeting of the minds between the parties, and therefore, no contract existed. The trial court concluded that the only theory under which Jeffrey could recover was quantum meruit. The trial court further concluded that it would not consider page three of the agreement, doubting its legitimacy, but would consider the plans and blueprints that were part of the discussions between the parties in the early stages of negotiations.

The trial court then found $224,022.26[2] to be the fair market value of the Woodses' home. In order to arrive at a just amount to compensate Jeffrey, the trial court deducted from the fair market value certain amounts for which Jeffrey provided no labor, materials, supplies, or services. The trial court deducted a total of $85,206.00 for plumbing, duct work, rock, grading, excavating, cabinets, tile, paint, painting, floors, geothermal, electrical, appliances, permits, and fees. The total amount owed Jeffrey under a quantum meruit analysis was $139,598.26. The Woodses had already paid Kaetzel $150,090.03, thereby overpaying him by $10,491.77. The trial court concluded that Jeffrey was entitled to take nothing by way of his amended complaint, and entered judgment against J & M Construction and Jeffrey and Marcia Kaetzel jointly and severally in the amount of $10,491.77.

[9] The trial court also considered Jeffrey's claims of entitlement to payment for extra projects completed for the Woodses by him. After hearing the evidence, the trial court concluded that the Woodses owed Jeffrey $6,652.39 for all extra projects, including trim, hedge labor, extra concrete pad, and enlargement of the back porch.

[10] The trial court then made findings, legal conclusions, and entered judgment against the Woodses and in favor of Oeding and Hassfurther, non-parties to the

---

[2] In the trial court's conclusions of law with respect to Kaetzel's claim on quantum meruit, paragraph 5(a) finds the fair market value of the Woodses' home to be $224,022.26. Appellees' App. p. 20. In subsequent conclusions with respect to that claim, however, the trial court cites the fair market value as $224,804.26, which is the price reflected in the April 16, 2010 agreement.

action, for the cost of extra projects that were not part of the agreement, but were completed by them for the Woodses.

[11] Next, the trial court considered the Woodses' counterclaims for construction defects and concluded that they were entitled to $39,370.00 for the repair of structural defects attributable to Jeffrey and J & M Construction. The trial court also entered judgment in favor of the Woodses for professional costs for a structural evaluation by a professional engineer incurred in the prosecution of that counterclaim. The Kaetzels and J & M Construction were ordered to reimburse the Woodses for attorney fees incurred in the prosecution of this counterclaim in an amount to be determined later.

[12] The trial court found that the Woodses had failed to meet their burden of proving fraud, slander of title, and breach of express and implied warranties. This appeal and cross-appeal followed.

[13] When entering judgment, the trial court, *sua sponte*, issued findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A). Under that rule, courts on review will not set aside the findings or judgment unless they are clearly erroneous and due regard shall be given to the opportunity of the trial court to judge the witnesses' credibility. *Best v. Best*, 941 N.E.2d 499 (Ind. 2011). We do not reweigh the evidence nor reassess witness credibility, and view the evidence most favorably to the judgment. *Id.* Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference. *Id.*

[14]     Neither party challenges the trial court's determination that Jeffrey was entitled to damages under principles of quantum meruit, nor do they challenge the trial court's calculation of damages. Jeffrey asks that we reverse the trial court's judgment awarding damages to the Woodses for their counterclaim under Indiana Code article 32-27 (West, Westlaw 2002), contending that the absence of a contract, which is a statutory prerequisite, makes the award improper.

[15]     The Woodses alleged in Count IV of their counterclaim that their home had a major structural defect, defect, or construction defect, as those terms are defined by statute, and that they met the definitions of both initial home buyers, or home owners, terms also defined by statute. Indiana Code section 32-27-2-2 (West, Westlaw 2002) defines an initial home buyer as "*a person who executes a contract with a builder* to buy a new home and who occupies the new home as its first occupant and occupies the new home as a residence." (emphasis added). A home owner is defined by Indiana code section 32-27-3-1(6) (West, Westlaw 2002) in pertinent part as any person that is the owner of the residence and *contracts* with a construction professional for the construction of a residence. Crucial to both definitions is the existence and execution of a contract.

[16]     When examining the trial court's special findings of fact, appellate courts review the sufficiency of the evidence supporting the trial court's findings of fact, and then determine if those findings support the trial court's conclusions. The Woodses seek damages authorized by statute. When a statute is clear and unambiguous, as the pertinent statutes are, we need not apply rules of statutory construction other than to give words and phrases their plain, ordinary, and

usual sense.  *City of Carmel v. Steele*, 865 N.E.2d 612 (Ind. 2007).  The existence of a contract is a question of law.  *Sands v. Helen HCI, LLC*, 945 N.E.2d 176 (Ind. Ct. App. 2011).

[17]     Regarding the Woodses' construction defects claims, the trial court concluded that the Woodses met the statutory definition of initial home buyer and home owner.  The trial court also found that "Kaetzels did, in fact, construct the 'New Home and Residence', but not in accordance with the 'Contract' or the Plans and Specifications."  Appellants' App. p. 27.  The trial court's only reference to a contract in this specific section of findings and conclusions thereon was to note that the home was built not in accordance with the contract, plans, and specifications; i.e., the home's construction suffered one or more of the kinds of defects as defined by statute and alleged in the counterclaims.

[18]     Although the trial court specifically concluded as a matter of law that the Woodses met the statutory definition of initial home buyer and homeowner, it made no specific findings pertaining to the execution of a contract, which would be necessary to support its conclusion.  Other findings explicitly made by the trial court, specifically addressing the issue of breach of contract, reflected that there was no contract, and those findings are supported by the evidence.  The Woodses, therefore, cannot succeed on their claim for statutory damages, the prerequisite for which is the existence and execution of a contract, when the trial court has made no finding in this specific section of its order, or by looking

at the findings in the entire order. Likewise, the Woodses cannot recover attorney fees, costs, or professional fees under the related statutes.

[19] The Woodses cross-appeal, contending that the trial court's award of damages to Oeding and Hassfurther is improper because they were not parties to the action. The Woodses further contend that the trial court used an improper measure of damages in determining the judgment amounts in favor of Oeding, Hassfurther, and Jeffrey for extra projects completed.

[20] The trial court issued specific findings of fact and conclusions thereon with respect to extra projects completed by Hassfurther, Oeding, and Jeffrey. Although Hassfurther and Oeding testified at trial, neither were named parties to the complaint, nor did they move to intervene in the cause of action. With respect to Hassfurther, the trial court found as follows:

> Hassfurther was a subcontractor of plaintiff. The plaintiff performed no services in the areas claimed by Hassfurther. Therefore, the plaintiff can make no claim under quantum meruit for services done by Hassfurther. Since Hassfurther was not a party to this action, Hassfurther cannot make a claim for its contribution to the reasonable value of this house on the basis on [sic] quantum meruit. Therefore, the only claims made by Hassfurther which shall be allowed are for "extra projects" between Hassfurther and the defendant. These will be itemized separately.

Appellants' App. pp. 22-23. After finding that the Woodses were equally responsible for the events contributing toward the expense associated with the retaining wall, the trial court awarded Hassfurther a judgment of $9,584.40 against the Woodses.

[21]    The trial court made the following findings pertaining to Oeding:

> Oeding was a subcontractor of plaintiff. The plaintiff performed no services in the areas claimed by Oeding. Therefore, the plaintiff can make no claim under quantum meruit for services done by Oeding. Since Oeding was not a party to this action, he cannot make a claim for his contribution to the reasonable value of this house on the basis of quantum meruit. Therefore, the only claims made by Oeding which shall be allowed are for "extra projects" between Oeding and the defendant. These will be itemized separately.

*Id.* at 24. The trial court then awarded Oeding a judgment of $5,597.54 against the Woodses.

[22]    While there is evidence to support the trial court's findings, we must reverse the trial court's award of damages in favor of Hassfurther and Oeding, which seem to be based on a theory of implied contract or quasi contract. "A judgment cannot properly be rendered for or against one who is not a party to the action." *Ind. Dept. of State Revenue v. Ind. Gamma Gamma of Alpha Tau Omega, Inc.*, 181 Ind. App. 664, 687, 394 N.E.2d 187, 201 (1979) (citing *Kist v. Coughlin*, 222 Ind. 639, 57 N.E.2d 586 (1944)). Because Hassfurther and Oeding were not parties to this action, we must reverse the trial court's judgment as to them.

[23]    The trial court also issued findings of fact and conclusions thereon pertaining to extra work performed for the Woodses by Jeffrey. The trial court specifically found that the addition of Craftsman trim to the interior of the house, hedge labor, extra concrete pad, and the expansion of the back porch were extra

projects completed for the Woodses by him. The trial court assigned values for the reasonable cost of the extra work totaling $6,652.39.

[24] The Woodses assert that the trial court used an improper measure of damages in determining the judgment amount. The trial court relied on invoices submitted by Kaetzel and admitted in evidence over objection as Plaintiff's Exhibit 29. The Woodses claim that if awarding damages under a theory of quantum meruit is proper, introduction of invoices and bills for materials purchased and of work done is insufficient to establish the reasonable value of the materials and labor, which is required to establish what benefit was received or rendered to the Woodses.

[25] Adhering to our standard of review, we observe that the trial court's findings of fact are supported by Plaintiffs' Exhibit 29. The Woodses do not dispute that the extra projects were requested and performed. Instead, they challenge the value of the benefit received by them. The evidence of that value was established by the invoices and bills, and while objected to, was uncontradicted. The trial court did not err by using that evidence to determine the measure of damages. The conclusion that Jeffrey is entitled to recovery for the value of the extra work totaling $6,652.39 is supported by the findings, which are supported by the evidence.

[26] The value of the home was $224,804.26 to which $85,206.00 Jeffrey is not entitled. The amount the Woodses owed Jeffrey is $139,598.26. The Woodses, however, have paid Kaetzel $150,090.03, thereby overpaying Kaetzel by

$10,401.74.[3]  The extra projects completed by Kaetzel are valued at $6,652.39. The Woodses are not entitled to statutory damages and are not liable in this cause of action for the extra projects completed by Hassfurther and Oeding, non-parties to the complaint.  Consequently, we instruct the trial court to enter judgment in favor of the Woodses for the difference, $3,749.35.

Judgment affirmed in part, reversed in part, and remanded with instructions.

Mathias, J., and Bradford, J., concur.

---

[3] The trial court's summary indicates an overpayment of $10,491.77 by the Woodses to Kaetzel.  Appellants' App. p. 26.  Our calculations reflect the overpayment is $10,401.74.