Lois BLACK, Administratrix of the Estate of Willie Black, deceased, and widow in her own right, Appellant–Plaintiff,

v.

ACANDS, INC., A & M Insulation Company, Brand Insulations, Inc., Combustion Engineering, Inc., General Refractories, North American Refractories, Rapid–American Corp., and Universal Refractories, Appellees–Defendants.

No. 45A04–9912–CV–565.

Court of Appeals of Indiana.

July 20, 2001.

Mark K. Dudley, Young, Riley & Dudley, Indianapolis, IN, Robert E. Paul, Paul, Reich & Myers, P.C., Philadelphia, PA, Attorneys for Appellant.

Raymond L. Faust, Norris, Choplin & Schroeder, LLP, Indianapolis, IN, Attorney for Brand Insulations, Inc.

Douglas B. King, James M. Boyers, Wooden & McLaughlin LLP, Indianapolis, IN, Attorneys for Rapid–American Corporation.

Susan E. Mehringer, Lisa M. Dillman, Lewis & Wagner, Indianapolis, IN, Attorneys for ACandS, Inc.

Christopher D. Lee, Lee F. Baker, Kahn, Dees, Donovan & Kahn, LLP, Evansville, IN, Attorneys for Combustion Engineering, Inc.

Gus Sacopulos, Sacopulos Johnson Carter & Sacopulos, Terre Haute, IN, Attorney for Universal Refractories.

Randall J. Nye, Beckman, Kelly & Smith, Hammond, IN, Attorney for General Refractories Company.

W. Russell Sipes, Laudig George Rutherford & Sipes, Indianapolis, IN, Attorney for Amicus Curiae Indiana Trial Lawyers Association.

Jon L. Williams, Indianapolis, IN, Janet Golup, Goldfein & Hosmer, Philadelphia, PA, Attorneys for Amici Curiae Asbestos Corporation Limited and Bell Asbestos Mines, Ltd.

## OPINION

MATTINGLY–MAY, Judge.

Lois Black, as administratrix of the Estate of Willie Black and as a widow in her own right, ("Black") appeals the Lake County Superior Court's grant of summary judgment for multiple defendants in her action for loss of consortium and the wrongful death of her husband, Willie.[1]

Black raises three issues on appeal, which we consolidate and restate as:

I. Whether Ind.Code § 34–20–3–2, which permits asbestos-related causes of action to be filed within two years of the date they accrue without regard to the ten-year products liability statute of repose contained in Ind.Code § 34–20–3–1, applies to Black's claims against the defendants herein;[2] and

II. Whether the trial court properly granted summary judgment for four of the defendants based on lack of product identification evidence.

We affirm in part, reverse in part, and remand.

## FACTS AND PROCEDURAL HISTORY

Willie Black was employed as a blast furnace worker at the Gary Works plant of USX Steel from 1956 to 1983. In the course and scope of such employment, he inhaled dust emitted from asbestos products. As a result of his exposure to asbestos dust, Black developed lung cancer, which caused his death on August 1, 1996.

On July 6, 1998, Black filed an action for wrongful death and loss of consortium against ACandS, Inc., A & M Insulation Company, A.P. Green Services, Inc., Brand Insulations, Inc., Combustion Engineering, Inc., General Refractories, North American Refractories, Rapid–American Refractories, Universal Refractories, Owens Corning Fiberglass, and William A. Pope Company. Each of these defendants subsequently filed a motion for summary judgment. The trial court heard oral argument on the motions on October 13, 1999. On December 3, 1999, the trial court granted the summary judgment motions of A & M Insulation Company and William A. Pope Company. Black did not oppose either of these motions at the hearing; nor does she present any issue on appeal with respect to the grant of these motions. The trial court also granted the motions of A.P. Green Services, General Refractories, Combustion Engineering, Inc., North American Refractories, and Owens Corning Fiberglass, on the ground that Black's claims were filed outside of the ten-year products liability statute of repose codified at Ind.Code § 34–20–3–1. The court granted the summary judgment motions of ACandS, Inc., Rapid–American Refractories, Universal Refractories, and Brand Insulations, Inc., based on Black's failure to present adequate evidence that Willie was exposed to their asbestos-containing products. Black appeals.

## STANDARD OF REVIEW

Summary judgment is appropriate only when there is no genuine issue of material

---

1. We heard oral argument in this case and two companion cases, which were consolidated solely for purposes of the oral argument, on January 31, 2001.

2. Because we find Ind.Code § 34–20–3–2 applies to Black's claim, we do not address Black's alternative assertions that the ten-year products liability statute of repose violates Article I, Section 12 or Article I, Section 23 of the Indiana Constitution and that Ind.Code § 34–20–3–2 violates Article I, Section 23 of the Indiana Constitution. *See Martin v. Richey*, 711 N.E.2d 1273, 1285 n. 2 (Sullivan, J., concurring) (if reviewing court may resolve a case on non-constitutional grounds, it will not proceed to resolve the constitutional issues presented).

fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). The burden is on the moving party to prove there are no genuine issues of material fact and it is entitled to judgment as a matter of law. Once the movant has met this burden, the opponent must respond by setting forth specific facts showing a genuine issue for trial; he may not simply rest on the allegations of his pleadings. *Stephenson v. Ledbetter,* 596 N.E.2d 1369, 1371 (Ind.1992). At the time of filing the motion or response, a party shall designate to the court all parts of pleadings, depositions, answers to interrogatories, admissions, matters of judicial notice, and any other matters on which it relies for purposes of the motion. T.R. 56(C).

When reviewing an entry of summary judgment, we stand in the shoes of the trial court. We do not weigh the evidence but will consider the facts in the light most favorable to the non-moving party. *Reed v. Luzny,* 627 N.E.2d 1362, 1363 (Ind.Ct. App.1994). We may sustain a summary judgment upon any theory supported by the designated materials. T.R. 56(C).

## DISCUSSION AND DECISION

I. *Application of Ind.Code § 34–20–3–2*

■ The instant causes of action for wrongful death and loss of consortium were filed within two years of Willie Black's death. However, his death occurred more than ten years after the defendants' last delivery of asbestos-containing products to the sites where Willie Black was exposed to them. In granting summary judgment in favor of the defendants, the trial court found that Black's claims were barred by the ten-year product liability statute of repose codified at Ind.Code § 34–20–3–1, because the defendants were not miners of commercial asbestos.

Indiana Code § 34–20–3–1 provides that [A] product liability action must be commenced:

(1) within two (2) years after the cause of action accrues; or

(2) within ten (10) years after the delivery of the product to the initial user or consumer.

However, if the cause of action accrues at least eight (8) years but less than ten (10) years after that initial delivery, the action may be commenced at any time within two (2) years after the cause of action accrues.

Indiana Code § 34–20–3–2 excepts certain asbestos-related actions from section one's ten-year statute of repose. This section defines accrual as the date when the injured person knows that he or she has an asbestos-related disease or injury. Specifically, § 34–20–3–2 provides that a product liability action based on personal injury, disability, disease, or death resulting from exposure to asbestos must be commenced within two years after the injured person knows that he or she has an asbestos-related disease, without regard to the ten-year statute of repose. Under this section,

(d) This ... [exception] ... applies only to product liability actions against:

(1) *persons who mined and sold* commercial asbestos; and

(2) funds that have, as a result of bankruptcy proceedings or to avoid bankruptcy proceedings, been created for the payment of asbestos related disease claims or asbestos related property damage claims.

Ind.Code § 34–20–3–2(d) (emphasis supplied).

The defendants contend this exception applies only to persons who satisfy both

criteria—persons who both mined *and* sold—commercial asbestos. Black argues this section's exception to the statute of repose should be interpreted to allow suits against either persons who mined commercial asbestos or persons who sold commercial asbestos.

We find that the construction urged by the defendants is inconsistent with other provisions of the product liability act and with our supreme court's precedent and would lead to an absurd result. Thus, we hold the exception applies to persons who mine commercial asbestos and to persons who sell, but do not mine, commercial asbestos. Therefore, summary judgment for the defendants on the ground that none of the defendants mined commercial asbestos was improper.

We note at the outset that in at least three prior decisions, panels of this court have indicated in dicta that the language of this statutory exception is unambiguous, *see Sears Roebuck and Co. v. Noppert*, 705 N.E.2d 1065, 1068 (Ind.Ct.App.1999), and that the exception applies only to entities that both mine and sell commercial asbestos. *Id.; Novicki v. Rapid–American Corp.*, 707 N.E.2d 322, 324 (Ind.Ct.App. 1999).[3] *See also Holmes v. ACandS, Inc.*, 711 N.E.2d 1289 (Ind.Ct.App.1999) (where on rehearing we discussed *Noppert* and *Novicki.*) In the case currently before us, however, we are presented for the first time[4] with cogent argument and legal authority identifying the ambiguity of this section and directly addressing the question of its meaning.

When considering a statute, this court is guided by well-established rules of statutory construction. *Public Employees' Retirement Fund v. Shepherd*, 733 N.E.2d 987, 989 (Ind.Ct.App.2000). When a statute is unambiguous, we need not look beyond its plain language to determine the meaning, and we do not resort to other rules of statutory construction. *Id.* Indeed, "we are not free to construe a statute which is unambiguous, and our ability to effect perceived legislative purposes is necessarily limited to the language of the statute." *Office of Utility Consumer*

---

**3.** As the dissent indicates, Judge McKinney took the same approach in *Spriggs v. Armstrong World Indus.*, No. IP91–651, 1999 U.S. Dist. LEXIS 19874 (S.D. Ind. May 7 1999). It is well established that decisions of the federal district courts are not binding on this court, *see, e.g., Security Credit Acceptance Corp. v. State*, 144 Ind.App. 558, 575, 247 N.E.2d 825, 834 (1969), and we must decline to adopt Judge McKinney's analysis for the reasons explained below.

**4.** In *Noppert*, we found no ambiguity that would require us to interpret the exception, because the plaintiffs did not claim Sears mined asbestos and "a reasonable trier of fact could not find that Sears was a commercial seller of asbestos in their sales and installation of residential boilers." 705 N.E.2d at 1068. In *Novicki*, the trial court had granted Rapid–American's motion to dismiss and Novicki appealed. Both parties assumed on appeal that the exception was dispositive, but we disagreed: "[i]n arguing its motion to dismiss, Rapid–American has relied exclusively on [the exception] but has also conceded facts that render [the exception] inapplicable." Rapid–American had stated in its brief on appeal that it *"never both mined and sold commercial asbestos,"* 707 N.E.2d at 324 (emphasis in original). We remanded rather than "attempt to analyze the case under [the predecessor statute] and the applicable case law without any relevant briefing from the parties." *Id.* In our original *Holmes* decision, 709 N.E.2d 36 (Ind.Ct.App.1999) we were faced with the task of interpreting and explaining the meaning of the statute of limitations for asbestos-related actions. We did not address the question to whom the exception in § 34-20-3-2 applies. On rehearing we addressed a defendants' contention that our original *Holmes* decision was in conflict with *Noppert* and *Novicki*. We determined it was not, but the question whether the exception applies only to entities that both mine and sell asbestos was not before us on rehearing.

*Counselor v. Public Serv. Co. of Indiana, Inc.*, 608 N.E.2d 1362, 1363–64 (Ind.1993). This is true even though a "statute as written may not, in the estimation of some, be good public policy." *Rieddle v. Buckner*, 629 N.E.2d 860, 865 (Ind.Ct.App.1994) (Sullivan, J., concurring); *see also Boehm v. Town of St. John*, 675 N.E.2d 318, 321 (Ind.1996).

 In determining whether a statute is ambiguous, it is appropriate to look at the grammatical structure of language in the statute. *Russell v. Russell*, 682 N.E.2d 513, 517 (Ind.1997). Still, a reviewing court is "at liberty to make minor substitutions of words where necessary to give vitality to the legislative intent." *Dague v. Piper Aircraft Corp.*, 275 Ind. 520, 526, 418 N.E.2d 207, 211 (1981). The *Dague* court interpreted a products liability statute of repose in a manner that "in effect, changes the disjunctive term 'or,' which of course, appears in the statute, to the conjunctive 'and'" where giving the term "or" its ordinary meaning would "fl[y] in the face of a clearly contrary legislative intent." *Id.*

Ind.Code § 34–20–3–2(d)(1) states that the exception to the ten-year statute of repose contained in § 34–20–3–1 applies "*only* to product liability actions against . . . persons who mined *and* sold commercial asbestos." (Emphasis added). In *Covalt v. Carey Canada, Inc.*, 543 N.E.2d 382 (Ind.1989), our supreme court addressed the following certified question concerning the predecessor statute to the current general products liability two year statute of limitations and ten year statute of repose: "Whether a plaintiff may bring suit within two years after discovering a disease and its cause, notwithstanding that the discovery was made more than ten years after the last exposure to the product that caused the disease." *Id.* at 384. The court answered the certified question in the affirmative, holding that the statute of repose was "inapplicable to cases involving protracted exposure to an inherently dangerous foreign substance which is visited into the body." *Id.* at 385.

The *Covalt* court noted that "one can be injured from prolonged exposure to newly milled and manufactured asbestos" (*i.e.*, asbestos directly from the mine) "just as readily as asbestos which has been on the market for ten (10) years or more" (*i.e.*, asbestos provided by a seller). *Id.* For that reason, no purpose is served in legally distinguishing the two.[5] *Id.* The court went on to note that in addressing the statute of repose, "we are not concerned here with the introduction of a product into the marketplace. Here we are concerned with exposure to a hazardous foreign substance which causes disease." *Id.* at 386.

 The legislative intent as ascertained from the act as a whole prevails over the strict literal meaning of any word. In reading a statute, we will not overemphasize a strict literal or selective meaning of individual words. *Shell Oil Co. v. Meyer*, 705 N.E.2d 962, 970 (Ind.1998). Rather, we must consider the statute as an entirety, with each part being viewed not as an isolated fragment but with reference to all other companion provisions. Our supreme court in *Covalt* characterized the statutory section before us as the legisla-

---

5. We note that while the certified question in *Covalt* was pending, the General Assembly enacted Ind.Code § 33–1–1.5–5.5 (section two's predecessor), which specifically addresses asbestos-related claims. The *Covalt* decision did not analyze or address the effect of this section on Covalt's claim against an asbestos mining company. However, we find *Covalt's* reasoning instructive to the extent it indicates there is no basis for treating "mined" and "sold" asbestos differently for product liability purposes.

ture's "exception to its limitations and repose periods for asbestos related actions." 543 N.E.2d at 383. The strict literal interpretation urged upon us by the defendants would lead to the illogical result that "asbestos-related actions" were limited to those actions brought against miners of asbestos, and did not include actions against manufacturers and sellers if they did not also mine the product. Because the statute of repose is concerned not with the introduction of the asbestos into the marketplace but with exposure to the hazardous foreign substance ·that causes disease, *id.* at 386, an interpretation of the statute that permits or denies recovery based solely on the nature of the entity that introduced the asbestos into the marketplace cannot stand. We believe the legislature could not have intended to permit actions against an entity that both mined and sold asbestos but to preclude actions against entities that introduced asbestos into the marketplace as miners only or as sellers only.[6]

Clearly, the intent of the legislature in enacting § 34–20–3–2 was at least in part to acknowledge the long latency period of asbestos-related injuries. Without the § 34–20–3–2 exception, the statute of limitations and statute of repose would be meaningless for the vast majority of people harmed by exposure to asbestos. Asbestos-related injuries would truly be a wrong without a remedy. Equally clear is that the legislature thus could not have intended by enacting § 34–20–3–2 to so severely limit the means of recovery.

Moreover, reading § 34–20–3–2 as the defendants urge would create a statute of limitations unlike any other known to our law, and would result in the legislature having assigned culpability for asbestos-related injuries solely to those few entities that both mined and sold asbestos, rather than allowing to be held accountable all those who contributed to the dissemination of asbestos-containing products in the marketplace.

We also find the defendants' interpretation of Ind.Code § 34–20–3–2(d)(1) cannot be harmonized with subsection (d)(2), which allows actions initiated outside of the ten-year statute of repose to proceed against "funds that have, as a result of bankruptcy proceedings or to avoid bankruptcy proceedings, been created for the payment of asbestos related disease claims or asbestos related property damage claims." This exception apparently applies regardless of whether the funds were created by proceedings involving a miner or a seller who was not a miner. So, under the

---

**6.** The dissent opines that the legislature made a "policy decision" to limit the exception to miners who also sold asbestos because it is difficult, if not impossible, to determine which mine's fibers are in any commercial asbestos product. Our result, the dissent suggests, usurps the legislature's constitutional authority to make such policy determinations.

In the absence of any direct evidence of legislative intent, we decline to attribute to the legislature the specific "policy decision" offered by the dissent. As explained above, adoption of that purported policy is inconsistent with the recognized focus of the product liability statutes of repose on exposure to the hazardous foreign substance that causes disease and not on the entity that introduces the product asbestos into the marketplace, and would in effect recognize a wrong without a remedy. We presume the legislature intended the language used in the statute to be applied logically and not to bring about an unjust or absurd result, *Sales v. State* 723 N.E.2d 416, 420 (Ind.2000). We are therefore obliged to examine the statute as a whole, and to avoid, when necessary, "excessive reliance on a strict literal meaning or the selective reading of individual words." *Id.* Accordingly, our decision does not usurp the legislature's authority to make policy determinations but instead permits the logical and just application of this section by avoiding the "excessive reliance on a strict literal meaning" the dissent urges.

defendants' interpretation, viable companies that sold asbestos but did not mine it would be excluded from liability, but those same companies, if in bankruptcy with the funds contemplated in section (d)(2), would be subject to claims. We decline to interpret the statute to permit this anomalous result, and we accordingly hold that the exception applies to entities that mine commercial asbestos, even if they do not sell it,[7] and to entities that sell commercial asbestos, even if they do not mine it.

## II. *Evidence of Product Identification*

■ The trial court's grant of summary judgment for four defendants—Rapid-American,[8] Universal Refractories, ACandS, and Brand—was premised on Black's failure to come forth with evidence sufficient to support an inference that her husband had inhaled asbestos dust from a defendant's product. To avoid summary judgment, a plaintiff must produce evidence sufficient to support an inference that he inhaled asbestos dust from the defendant's product. *Peerman v. Georgia–Pacific Corp.*, 35 F.3d 284, 287 (7th Cir. 1994) (applying Indiana law).[9] Black's product identification evidence with regard to these four defendants was at best conjectural and insufficient to support the inference the decedent inhaled dust from any of the four defendants' products, and we therefore cannot say the trial court erred in granting summary judgment for these defendants on that basis.

### 1. *Universal Refractories*

The trial court noted that Universal Refractories provided evidence that it did not distribute asbestos-containing brick that was used at Willie Black's workplace while he was employed there. Black points to deposition testimony given by Ronnie Black, Willie Black's son, which she characterizes as testimony that "Universal Re-

---

7. We find it unlikely that there exists any company which mines asbestos but does not sell it, whether to a third party buyer or to another section of its own company.

8. In its order, the trial court found that Black's response to Rapid–American's motion for summary judgment was late, and thus did not consider Black's late response. The trial court did, however, go on to determine that Black's evidence, even if it were considered, would be insufficient to raise a question of fact.

 It appears from the record that the evidence on which Black relies to show her decedent was exposed to Rapid–American's asbestos was part of that late response. Black does not address on appeal the timeliness of her response. Accordingly, we decline to consider that evidence on appeal, and affirm the grant of summary judgment for Rapid–American.

9. The *Peerman* court noted that neither this court nor our supreme court had enumerated a test for causation in asbestos cases. 35 F.3d at 286. In *Owens Corning Fiberglas Corp. v. Cobb*, 714 N.E.2d 295, 303 (Ind.Ct. App.1999) we found the trial court erred in denying Owens Corning's motion for summary judgment when Cobb had offered no "concrete facts" from which the trial court could conclude that he had been exposed to asbestos fibers from an Owens Corning product. Rather, we found, Cobb's claim "was based solely on conjecture." *Id.* Cobb's evidence was that the Owens Corning asbestos-containing product was used as a pipe covering; that the product was present at a job site where Cobb had worked; that Cobb had removed pipe covering; but that the pipe covering he removed did not have a brand name on it and that another manufacturer's product was also used as pipe covering at the same site. We found only the *"possibility"* that the product was installed or removed while Cobb was at the job site, and noted that to conclude the asbestos fibers were actually released into the air and inhaled by Cobb "would require an even more tenuous reliance on mere inferences, not facts." *Id.* at 302 (emphasis in original). We note that our supreme court has granted transfer, 735 N.E.2d 219 (2000) and our *Cobb* decision has therefore been vacated. Ind. Appellate Rule 11(B).

fractories employees installed asbestos near his father." (Br. of Appellant, Lois Black at 22) (hereinafter "Appellant's Br.").

The deposition testimony on which Black relies indicated refractories generally lined the furnaces at the decedent's workplace, and because the word "refractories" was after "Universal," Universal Refractories must have been one of the entities that provided such refractory material. Ronnie Black also testified that he saw pallets of bricks marked "Universal" at the decedent's workplace, but he conceded that those bricks might well have been products of Universal Cement, a subsidiary of the decedent's employer. Because the evidence Universal's product was present at the decedent's workplace is speculative at best, we cannot say the trial court erred in granting summary judgment for Universal based on an absence of product identification evidence.

### 2. *ACandS*

Black notes evidence that ACandS had a contract for installing and removing asbestos in the areas where the decedent worked during the years he was employed at U.S. Steel. Black also points to testimony by the decedent's son, which she characterizes as "evidence against AC & S." (Appellant's Br. at 23.) Our review of those parts of the record to which Black directs us as "evidence against AC & S" reveals no mention whatsoever of that defendant. The record does include invoices that indicate ACandS performed insulation maintenance work that involved asbestos-containing products; however, we note that the decedent worked in the area of U.S. Steel where that insulation work was done only "off and on, say no more than a year" (R. at 1563) during the period 1969–1983.[10] This evidence provides only specu-

lation that the activities of ACandS might have exposed the decedent to asbestos products ACandS installed; accordingly, we cannot say the trial court erred in granting summary judgment for ACandS based on an absence of product identification evidence.

### 3. *Brand*

Black asserts in her brief that "Ronnie Black again testified to the presence of Brand employees installing asbestos in the Decedent's workplace." (Appellant's Br. at 22.) In fact, Ronnie Black testified, "I don't know if the installers were Brand or not. They were called outside contractors. They come in and do their job." (R. at 1460.) Ronnie Black did testify that he saw pipe covering manufactured by Brand at the decedent's workplace, but Brand provided evidence, and the trial court found, that Brand was an installer, and was never a manufacturer, of the insulation. Ronnie Black further testified that he believed the products marked "Brand" contained asbestos because "at the meeting they said that most of the material used for insulation was made out of asbestos." (*Id.* at 1461.) We cannot say the trial court erred in finding Black had failed to provide evidence to support the inference that the plaintiff was exposed to asbestos dust from Brand products; summary judgment for Brand was therefore proper.

### CONCLUSION

We hold that the exception contained in Ind.Code § 34–20–3–2 to the general ten-year product liability statute of repose applies to claims against miners of commercial asbestos and against sellers of commercial asbestos, even if those sellers do not also mine the product. Therefore,

---

10. The invoices to which Black directs us are for work done in 1968–1970.

Black's claims against those defendants who are sellers but not miners of commercial asbestos are not barred by the ten-year statute of repose in Ind.Code § 34–20–3–1. We further find proper the trial court's grant of summary judgment for defendants Rapid–American, Universal Refractories, ACandS, and Brand on the ground Black had failed to show the decedent might have been exposed to asbestos manufactured or installed by those defendants.

Affirmed in part, reversed in part, and remanded.

ROBB, J., concurs.

MATHIAS, J., dissents with opinion.

MATHIAS, J., dissenting.

I respectfully dissent.

There are three dispositive issues of law presented in this appeal:

I. Whether Indiana Code section 34–20–3–2, which permits asbestos-related causes of action to be filed within two years of the date they accrue without regard to Indiana Code section 34–20–3–1 ten-year products liability statute of repose, applies to Black's claims against the defendants herein;

II. Whether the ten-year products liability statute of repose in Indiana Code section 34–20–3–1 violates Article I, Section 12 or Article I, Section 23 of the Indiana Constitution; and

III. Whether Indiana Code section 34–20–3–2 violates Article I, Section 23 of the Indiana Constitution.

I would affirm the trial court on these questions of law, thereby mooting the specific factual issues related to exposure unique to each plaintiff in these cases.

I agree with the majority's citation of the operative facts and its broad outline of the applicable standards of review. I must disagree, however, with the majority's rendering of the relevant statutory language, characterization of recent caselaw on point as dicta, and reliance on *Covalt v. Carey Canada, Inc.*, 543 N.E.2d 382 (Ind.1989), a case that predates the statutory language at issue herein.

## I. Application of Indiana Code Section 34–20–3–2

The instant causes of action for wrongful death and loss of consortium were filed within two years of the date of Willie Black's death. However, his death occurred more than ten years after the defendants' last delivery of asbestos-containing products to the sites where he was exposed to them. In granting summary judgment in favor of the defendants, the trial court found that Black's claims were barred by the ten-year product liability statute of repose codified at Indiana Code section 34–20–3–1 because the defendants were not miners of commercial asbestos.

Indiana Code section 34–20–3–1 provides that a products liability action must be commenced within two years after the cause of action accrues or within ten years after the delivery of the product to the initial user or consumer, unless the cause of action accrues at least eight years, but before ten years, after the initial delivery of the product, in which case the cause of action may be commenced within a new two-year statute of limitation.

However, Indiana Code section 34–20–3–2 excepts certain asbestos-related actions from section one's ten-year statute of repose and defines accrual as the date when the injured person knows that he/she has an asbestos-related disease or injury. Specifically, section two provides that a product liability action based on property damage resulting from asbestos or person-

al injury, disability, disease, or death resulting from exposure to asbestos must be commenced within two years after the injured person knows that he/she has an asbestos-related disease, without regard to the ten-year statute of repose. Under section two,

> (d) This ... [exception] ... applies only to product liability actions against:
>
>> (1) persons who mined and sold commercial asbestos; and
>>
>> (2) funds that have, as a result of bankruptcy proceedings or to avoid bankruptcy proceedings, been created for the payment of asbestos related disease claims or asbestos related property damage claims.

Ind.Code § 34–20–3–2(d).

Black contends that section two's exception to the statute of repose should be interpreted to allow suits against persons who mined and persons who sold commercial asbestos. The defendants respond that the exception applies only to persons who satisfy both criteria: "persons who mined and sold" commercial asbestos. *Id.*

A. *The Language of the Statute*

When considering a statute, this court is guided by well-established rules of statutory construction. *Public Employees' Retirement Fund v. Shepherd*, 733 N.E.2d 987, 989 (Ind.Ct.App.2000). When a statute is unambiguous, we need not look beyond its plain language to determine the meaning, and we do not resort to other rules of statutory construction. *Id.* Indeed, "we are not free to construe a statute which is unambiguous, and our ability to effect perceived legislative purposes is necessarily limited to the language of the statute." *Office of Utility Consumer Counselor v. Public Serv. Co. of Indiana, Inc.*, 608 N.E.2d 1362, 1363–64 (Ind.1993). This is true even though a "statute as

written may not, in the estimation of some, be good public policy." *Rieddle v. Buckner*, 629 N.E.2d 860, 865 (Ind.Ct.App.1994) (Sullivan, J., concurring); *see also Boehm v. Town of St. John*, 675 N.E.2d 318, 321 (Ind.1996).

In determining whether a statute is ambiguous, it is appropriate to look at the grammatical structure of language in the statute. *Russell v. Russell*, 682 N.E.2d 513, 517 (Ind.1997) (citing *Evansville v. Zirkelbach*, 662 N.E.2d 651, 653 (Ind.Ct.App.1996), *trans. denied* ). Subsection (d)(1) states that the exception to section one's ten-year statute of repose applies *"only* to product liability actions against ... persons who mined *and* sold commercial asbestos." (emphasis added).

The two verbs "mined" and "sold" are conjoined by the coordinating conjunction "and." The use of "and" alone is enough to, and does, conjoin the verbs "mined" and "sold" into a single verb element within the statute's complex noun phrase. The conjoined verbs "mined and sold" modify "persons" through the relative pronoun "who," which specifies the action related to, and thereby helps to define, the "persons" that are the subject of the complex noun phrase. *See* Randolph Quirk & Sidney Greenbaum, *A Concise Grammar of Contemporary English* 378 (1978). In light of its language and grammatical structure, I conclude that section two is unambiguous.

In contrast, the majority alters the statutory language at issue by inserting the phrase "persons who" before the statute's existing language, "sold commercial asbestos." Only when words are considered to have been palpably omitted should the court add those words into the statute. *United States Steel Corp. v. NIPSCO*, 486 N.E.2d 1082, 1085 (Ind.App.1985). I cannot reach that conclusion here. The ma-

jority's grammatical interpretation is not the product of divination of "clearly contrary legislative intent" so as to properly fall within the extremely limited sanction of *Dague v. Piper Aircraft Corp.*, 275 Ind. 520, 526, 418 N.E.2d 207, 211 (1981).

## B. *Recent Decisional Law*

The majority dismisses the facts and rationales of two recent opinions of this court: *Novicki v. Rapid–American Corp.*, 707 N.E.2d 322 (Ind.Ct.App.1999) and *Sears Roebuck & Co. v. Noppert*, 705 N.E.2d 1065 (Ind.Ct.App.1999). In *Noppert*, the plaintiff brought a product liability action against his employer, alleging that exposure to asbestos components during installation of products sold by his employer caused him to contract mesothelioma almost thirty years later. The Nopperts argued that their claims were not barred by the product liability statute of repose because Noppert's injury was an asbestos-related injury governed by Indiana Code section 33–1–1.5–5.5 (now recodified at Ind.Code § 34–20–3–2). *Id.* at 1067–68. We disagreed, finding that Sears was not a miner of asbestos and stating that the statutory exception to the statute of repose for asbestos-related claims applies only when the defendants are "miners *and* sellers of commercial asbestos." *Id.* at 1068 (emphasis added). We stated:

> while courts in Indiana have on occasion construed an "and" in a statute to be an "or," we find that there is no ambiguity in this statute requiring such an interpretation.

*Id.; see also Novicki*, 707 N.E.2d at 324 (holding that Indiana Code section 34–1–1.5–5.5, "[a]ccording to its express terms, ... applies only to cases in which the defendant both mined and sold commercial asbestos").

The majority chooses to label the conclusions reached in *Noppert* and *Novicki* "dic-ta." Maj. at 152. On the contrary, I find them instructive and, especially in *Noppert*, essential to the resolution of the case, rather than dicta. Judge McKinney reached the same conclusion in *Spriggs v. Armstrong World Industries*, No. IP 91–651, 1999 U.S. Dist. LEXIS 19874 (S.D.Ind. May 7, 1999).

For all of these reasons, I would hold that under *Noppert* and *Novicki* the language of the statute is unambiguous and applies only to persons who "mined and sold" commercial asbestos.

## C. *Covalt v. Carey Canada, Inc.*

The majority also relies on *Covalt v. Carey Canada, Inc.*, 543 N.E.2d 382 (Ind. 1989), which addressed the following certified question concerning the predecessor statute to the current general product liability two-year statute of limitations and ten-year statute of repose: "Whether a plaintiff may bring suit within two years after discovering a disease and its cause, notwithstanding that the discovery was made more than ten years after the last exposure to the product that caused the disease." *Id.* at 384.

Justice Pivarnik, joined by Justices Givan and DeBruler, answered the certified question in the affirmative, holding that the statute of repose was "inapplicable to cases involving protracted exposure to an inherently dangerous foreign substance which is visited into the body." *Id.* at 385. Chief Justice Shepard and Justice Dickson dissented in separate opinions. Both decried what Justice Dickson called the majority's "judicial revision" of the ten-year product liability statute of repose. *Id.* at 389 (Dickson, J., dissenting).

The majority believes that the holding of *Covalt* should apply to the instant claims. However, while the certified question in *Covalt* was pending, the General Assembly

enacted Indiana Code section 33–1–1.5–5.5 (section two's predecessor), which specifically addresses asbestos-related claims. The *Covalt* decision did not analyze or address the effect of this section on Covalt's claim against an asbestos mining company. Indeed, the majority in *Covalt* acknowledged that this section was not determinative of the case, which was filed prior to the statute's effective date. *Id.* at 383 n. 1. Moreover, the *Covalt* decision was limited, by its own terms, "to the precise factual pattern presented," i.e., an action against an asbestos mining company filed prior to the enactment of section two. *Id.* at 387.

I believe *Covalt* does not control because it was "orphaned" by the unique facts and statute it considered. Rather, Indiana Code section 34–20–3–2(d), which clearly and specifically addresses asbestos-related injuries, currently provides the only exception to section one's statute of repose.

### D. *Undesirable Results*

I fully recognize that the plain meaning of section two may produce results deemed undesirable or anomalous by the majority. For example, subsection (d)(2) allows actions initiated outside of section one's ten-year statute of repose to proceed against "funds that have, as a result of bankruptcy proceedings or to avoid bankruptcy proceedings, been created for the payment of asbestos-related disease claims or asbestos-related property damage claims." This exception apparently applies regardless of whether the funds were created by proceedings involving a miner or a seller who was not a miner. Although this "fund exception" is perhaps unusual, in making this exception the General Assembly could have reasonably chosen to restrict the types of ongoing businesses that could be liable for asbestos-related claims, while loosening restrictions to allow recovery against any business dissolving in bankruptcy or avoiding bankruptcy by creating a fund to satisfy asbestos-related claims.

The statute also distinguishes between miners who sell commercial asbestos and those who sell the product but do not mine it. The majority holds that "an interpretation of the statute that permits or denies recovery based solely on the nature of the entity that introduced the asbestos into the marketplace cannot stand." Maj. at 154. To the contrary, such a distinction could well be based on the General Assembly's determination that, because it is so difficult, if not impossible, to establish which mine's fibers are contained in any commercial asbestos product, only miners who also sold the product should be subject to the exception. Such a policy decision would also reduce, if not obviate, the need to consider application of the more drastic concept of market share liability within comparative fault law. In this context, it is important to remember that only the General Assembly has the clear constitutional authority to make such policy determinations. *See McIntosh v. Melroe*, 729 N.E.2d 972 (Ind.2000).

I acknowledge that other, arguably undesirable or anomalous results may also occur under the plain language of the statute. Neither the majority nor I can rightfully claim to fully know what the General Assembly "clearly" intended when it drafted, considered and enacted the statutory language at issue. However, I must reiterate that when a statute is unambiguous, "we may not ignore the clear language of a statute, regardless of our view as to its wisdom." *Robinson v. Monroe County*, 663 N.E.2d 196, 198 (Ind.Ct.App.1996). The legislature has wide latitude in determining public policy, and we may not substitute our own policy judgment for that of the legislature. *Boehm*, 675 N.E.2d at 321. "To the contrary, it is the duty of the

courts to interpret a statute as they find it, without reference to whether its provisions are wise or unwise, necessary or unnecessary, appropriate or inappropriate, or well or ill conceived." 73 Am.Jur.2d *Statutes* § 267 (1974). The trial court properly granted summary judgment in favor of the defendants.

## II. Constitutionality of Indiana Code 34–20–3–1

Once Indiana Code section 34–20–3–2 is upheld as written, its constitutionality must be considered. Black contends that application of the ten-year statute of repose violates her rights under Article I, Sections 12 and 23 of the Indiana Constitution. Specifically, Black argues that the statute of repose operates to bar claims such as hers before the injuries are known, and that plaintiffs who discover their injuries within the statute of repose are given privileges that those who do not discover their claims in time are not.

### A. *Article I, Section 12*

Our supreme court has recently considered the constitutionality of the general ten-year statute of repose for products liability actions. In *McIntosh v. Melroe,* 729 N.E.2d 972 (Ind.2000), the plaintiff was injured in an accident involving a skid steer loader more than ten years after the loader was delivered to the initial user. The trial court granted summary judgment in favor of the manufacturer based on the statute of repose, and the court of appeals affirmed. McIntosh sought transfer, arguing that the statute of repose violated his constitutional rights under Article I, Sections 12 and 23 of the Indiana Constitution.

In upholding the statute's constitutionality under Section 12, the supreme court highlighted the General Assembly's authority to identify, modify, and abrogate legally cognizable claims for relief, stating "we have long held that the General Assembly has the authority to modify the common law and that there is no 'fundamental right' to bring a particular cause of action to remedy an asserted wrong." *Id.* at 976–77. The court concluded that the plaintiff in *McIntosh* was not entitled to a remedy under Section 12 because "the General Assembly has determined that injuries occurring ten years after the product was delivered to a user are not legally cognizable claims for relief." *Id.* at 978. Further, the court concluded that the statute of repose is a rational means of achieving a legitimate legislative goal, as required by Section 12 jurisprudence. *Id.* at 980.

Black relies in no small degree on our supreme court's decision in *Martin v. Richey,* 711 N.E.2d 1273 (Ind.1999), to support her argument that the statute of repose violates her rights under Article I, Section 12. However, *Martin* is distinguishable because it dealt with the constitutionality of the two-year *statute of limitations* in the medical malpractice act as applied to a plaintiff who did not discover the malpractice until after the statute of limitations had run. The *Martin* court found that application of the statute of limitations cut off the plaintiffs *accrued* cause of action before it could reasonably be brought and that this was an "unreasonable and unconstitutional impairment of an existing and recognized remedy." *McIntosh,* 729 N.E.2d at 978 (citing *Martin,* 711 N.E.2d at 1284–85).

In contrast, the product liability *statute of repose* has the effect of extinguishing a potential cause of action *before it accrues. Id.* This is the fundamental and easily confused difference between a statute of limitations and a statute of repose. A statute of limitations requires that an action be brought within a shorter, specific time period after a cause of action has

accrued, while a statute of repose bars an action after a much longer specific time period by preventing accrual of the action thereafter. For all of these reasons, and pursuant to *McIntosh,* the statute of repose does not violate Article I, Section 12 of the Indiana Constitution.

### B. *Article I, Section 23*

*McIntosh* also provides the answer to Black's claim that the statute of repose violates Article I, Section 23. Under *Collins v. Day,* 644 N.E.2d 72, 79–80 (Ind. 1994), a two-prong test is applied to Section 23 challenges. "First, the disparate treatment accorded by the legislation must be reasonably related to inherent characteristics which distinguish the unequally treated classes. Second, the preferential treatment must be uniformly applied and equally available to all persons similarly situated." *Id.* at 80. As *McIntosh* made clear, the "distinctions" in the product liability act are not based on classes of persons, but on the age of the product that allegedly injured the claimant. 729 N.E.2d at 981. "Everyone may potentially recover for an injury from a product not yet ten years old, and everyone injured from an older product is barred." *Id.* at 981. This distinction is rationally related to serving the legislative goals behind the statute of repose and is a "permissible balancing of the competing interests involved." *Id.* For all of these reasons, the statute of repose does not violate Article I, Section 23 of the Indiana Constitution.

### III. Constitutionality of Section Two

Black also argues that the asbestos-related exception provided in Indiana Code section 34–20–3–2 violates Article I, Section 23 of the Indiana Constitution. Specifically, she contends that the exception grants privileges to persons injured by miners and sellers of commercial asbestos that are not granted to persons injured by

sellers who are not miners. This argument is without merit. All potential asbestos plaintiffs' injuries are the result of the initial sale of asbestos from a miner and a seller, and all plaintiffs may take advantage of the exception found in section two to sue miners and sellers of commercial asbestos.

Black, and *amici,* also seem to argue that section two unconstitutionally distinguishes between classes of defendants. Black may not challenge section two's constitutionality on this ground because she does not belong to the class allegedly discriminated against. *Indiana Dept. of State Revenue v. Indiana Gamma Gamma of Alpha Tau Omega, Inc.,* 181 Ind. App. 664, 394 N.E.2d 187, 197 (1979).

For the foregoing reasons, Black's claim that section two violates Article I, Section 23 must fail.

### Conclusion

For all of these reasons, I would hold that the section two exception to the general ten-year product liability statute of repose applies only to claims against miners and sellers of commercial asbestos. Therefore, Black's claims against the instant defendants, who are not miners and sellers of commercial asbestos, are barred by the ten-year statute of repose in Indiana Code section 34–20–3–1. I would further hold that this statute does not violate Article I, Section 12 or Section 23 of the Indiana Constitution. Finally, I would conclude the Indiana Code section 34–20–3–2(d) exception to the ten-year statute of repose does not violate Black's rights under Article I, Section 23. Accordingly, I believe the trial court correctly determined that Black's claims are barred by section one's ten-year statute of repose.