**William M. PARKS and Wilma Parks, Appellant–Plaintiffs,**

**v.**

**A.P. GREEN INDUSTRIES, INC., B.M.W. Constructors, Inc., Chicago Fire Brick Company, Hunter Corporation, Morrison Construction, and Uniroyal, Inc., Appellees–Defendants.**

No. 45A03–0007–CV–240.

Court of Appeals of Indiana.

Sept. 14, 2001.

Robert E. Paul, Paul, Reich & Myers, P.C., Philadelphia, PA, Mark K. Dudley, Young, Riley & Dudley, Indianapolis, IN, Attorneys for Appellants.

W. Russell Sipes, Laudig George Rutherford & Sipes, Indianapolis, IN, for Amicus Curiae/Indiana Trial Lawyers Association.

Nancy G. Tinsley, Jennifer K. Bowman, Baker & Daniels, Indianapolis, IN, for B.M.W. Constructors.

Bruce L. Kamplain, Norris, Choplin & Schroeder, LLP, Indianapolis, IN, for Chicago Fire Brick Company.

Edward J. Matushek III, Matushek & Associates, L.L.C., Chicago, IL, for Hunter Corporation.

G. Ronald Heath, Michael D. Ramsey, Johnson, Smith, Pence & Heath, LLP, Indianapolis, IN, for Uniroyal, Inc.

## OPINION

DARDEN, Judge

### STATEMENT OF THE CASE

William and Wilma Parks ("the Parkses") appeal the trial court's grant of summary judgment in favor of the following corporations: (1) A.P. Green Services, Inc. ("Green"), a Michigan corporation; (2) B.M.W. Constructors, Inc. ("B.M.W."), an Indiana corporation doing business in Indiana; (3) Chicago Firebrick Company ("Chicago Firebrick"), an Illinois corporation; (4) Garlock, Inc. ("Garlock"),[1] an Ohio corporation; (5) Hunter Corporation ("Hunter"), a Delaware corporation; (6) Morrison Construction Company ("Morrison"), an Indiana corporation doing business in Indiana; (7) Owens Corning Fiberglass Corporation ("Owens Corning"),[2] a Delaware corporation; and (8) Uniroyal, Inc. ("Uniroyal"), a New Jersey corporation.

Affirmed in part, reversed in part, and remanded.

### ISSUES

I. Whether the Parkses presented sufficient evidence to create a genuine issue of material fact on product identification.

II. Whether the statute of repose bars the Parkses' asbestos product liability claim.

### FACTS

From approximately 1969 until 1988, Mr. Parks worked as an ironworker and boilermaker at various sites in northwestern Indiana. Each of the above-mentioned corporate entities are alleged to have been engaged in the business of manufacturing, distributing, installing, or removing industrial products that may have contained asbestos at those sites. On June 13, 1988, Mr. Parks was diagnosed with asbestosis. In 1989, Mr. Parks filed a complaint in the United Stated District Court for the Southern District of Indiana against defendants not included in the instant case. He alleged that his illness was proximately caused by the "various asbestos and asbestos materials mined, manufactured, processed, imported, converted, compounded or sold by [those] [d]efendants." (R. 218).

1. After a physical checkup in January 1999, Mr. Parks was informed that an x-ray revealed a "spot or growth in the left lung." (R. 376).

2. In late February 1999, a pulmonary specialist at Veterans Hospital in Tampa told Mr. Parks that the spot appeared to be lung cancer. Dr. Suwan of Methodist's Hospital in Indianapolis diagnosed Mr. Parks as having lung cancer on April 13,

---

1. Garlock has entered into a settlement agreement with the Parkses.

2. Owens Corning has filed for bankruptcy.

1999, and one-third of his left lung was subsequently removed.

3. On February 24, 1999, the Parkses had filed the instant products liability and loss of consortium action. Their complaint was amended on September 21, 1999 to include the lung cancer as a subsequent disease. They alleged that Mr. Parks was exposed to asbestos under the following circumstances: (1) through contact with products containing asbestos that were manufactured, sold, distributed, or installed by Green, Chicago Firebrick, Garlock, and Uniroyal; (2) by inhaling asbestos dust and fibers as an employee of B.M.W.; and (3) by inhaling asbestos dust and fibers created by the work of Hunter's and Morrison's employees.

On November 2–3, 1999, the defendants filed their motions for summary judgment. Chicago Firebrick, Green, Hunter,[3] and Uniroyal argued that the statute of repose barred the Parkses' claims. B.M.W. first argued that because Mr. Parks was its employee, worker's compensation was his exclusive remedy against it. Additionally, B.M.W., Chicago Firebrick, Hunter, and Morrison argued that the Parkses failed to provide evidence that Mr. Parks was exposed to an asbestos product manufactured or produced by a particular defendant.

The Parkses responded by arguing that the legislature did not intend the statute of repose to bar their claim, and that adopting the defendants' interpretation of the statute of repose would violate Article I, §§ 12 and 23 of the Indiana Constitution. Further, the Parkses asserted that they had designated sufficient evidence to identify asbestos products manufactured or produced by a particular defendant.

The trial court heard arguments on March 6, 2000 and took the matter under advisement. On June 12, 2000, the trial court issued its order denying Chicago Firebrick's motion for summary judgment based on product identification, but granted B.M.W.'s, Hunter's, and Morrison's motions for summary judgment. The trial court also found that the statute of repose barred the Parkses cause of action because Mr. Parks' "last exposure must have occurred more than 10 years before this action was filed, . . . ." (R. 1241). Thereafter, the trial court granted the instant defendants' motions for summary judgment based on the statute of repose. In addition, the trial court found that the law governing the continuing tort doctrine, the constitutional arguments, and the statute of limitations entitled the defendants to judgment as a matter of law. The Parkses appeal.

### DECISION

■ "The purpose of summary judgment is to terminate litigation about which there can be no factual dispute and which may be determined as a matter of law." *Kottlowski v. Bridgestone/Firestone,* 670 N.E.2d 78, 82 (Ind.Ct.App.1996), *trans. denied.* We apply the same standard as the trial court when reviewing a motion for summary judgment, and we resolve any doubts as to facts or inferences in favor of the party opposing summary judgment. *Id.*

■ After designating its evidence, the moving party bears the burden "of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law." *Luider v. Skaggs,* 693 N.E.2d 593, 595 (Ind.Ct.App.1998), *trans.*

**3.** Although Hunter argued in its motion for summary judgment that the statute of repose barred the Parkses' claim, the trial court's

judgment neither grants or denies its motion on this issue.

*denied.* If these two requirements are met, the burden then shifts to the non-moving party to designate facts showing that a genuine issue of material fact exists. *Id.* "When the defendant makes a motion for summary judgment supported by materials contemplated by T.R. 56, the plaintiff may not rest on her pleadings, but must set forth specific facts controverting the claim for summary judgment, using supporting materials contemplated by the rule." *Colen v. Pride Vending Service,* 654 N.E.2d 1159, 1162–1163 (Ind.Ct.App. 1995), *trans. denied.*

 Further, the trial court's decision on a motion for summary judgment comes to appellate review clothed with a presumption of validity. *Hayden v. Paragon Steakhouse,* 731 N.E.2d 456 (Ind.Ct.App. 2000). As appellants, the Parkses must persuade us that the judgment was erroneous.

## I. *Product Identification*

The Parkses argue that the trial court erred in granting summary judgment because they presented sufficient evidence to create a genuine issue of material fact concerning product identification. Relying on *Harris v. Owens–Corning Fiberglas Corp.,* 102 F.3d 1429 (7th Cir.1996), the trial court found that the Parkses had failed to provide evidence that Mr. Parks had been "exposed to asbestos dust from a product manufactured or distributed by a particular defendant." (R. 1235). The trial court explained that the Parkses must show " 'that the defendant's product, as it was used during the plaintiff's tenure at the job site, could possibly have produced a significant amount of asbestos dust and that the asbestos dust might have been inhaled by the defendant.' " *Harris,* 102 F.3d at 1432 (quoting *Peerman v. Geor-*

*gia–Pacific Corp.,* 35 F.3d 284, 287 (7th Cir.1994)).

Citing *Peerman,* we have recently held that in order to avoid summary judgment, "a plaintiff must produce evidence sufficient to support an inference that he inhaled asbestos dust from the defendant's product." *Black, ex rel. Black v. ACandS,* 752 N.E.2d 148, at 155 (Ind.Ct.App.2001). "However, an inference is not reasonable when it rests on no more than speculation or conjecture." *Hayden,* 731 N.E.2d at 458; *Black,* 752 N.E.2d 148.

### 1. *B.M.W.*

Although the Parkses concede that they cannot recover for exposure during Mr. Parks' employment with B.M.W.,[4] they argue that sufficient evidence was designated in Mr. Parks' deposition showing that he was exposed to asbestos used by B.M.W. employees while he was working for another contractor. B.M.W. argues that Mr. Parks' testimony is speculative because he cannot remember when he was close enough to other B.M.W. employees "to be exposed to an asbestos-containing products that B.M.W. might have been using." B.M.W.'s Brief at 9.

 In this case, we find Mr. Parks' testimony to be speculative concerning whether B.M.W. workers exposed him to asbestos while he was working at the same facility for another employer. The record reveals that Mr. Parks did not know if B.M.W. workers were ever working at the same facility where he worked. He then stated in his deposition that they "could have been." R. 180. However, he could not give a specific date, time, or place. Further, the record reveals no identification of an asbestos-containing product that would have been used by B.M.W.'s em-

---

4. The trial court found that the Indiana Occupational Diseases Act, codified at Ind.Code § 22–3–7–6, barred the Parkses recovery for any exposure to asbestos products while Mr. Parks was employed by B.M.W.

ployees while Mr. Parks was not an employee. Therefore, the Parkses have not presented sufficient evidence that Mr. Parks inhaled asbestos dust from products used by B.M.W.

### 2. *Chicago Firebrick*

■ Chicago Firebrick argues that the trial court erred in finding that the Parkses produced sufficient evidence that Mr. Parks inhaled asbestos from Chicago Firebrick products. We agree with the trial court. The record reveals that Mr. Parks testified that when he was refitting furnaces during the early 1970's, he observed that the bricklayers used firebricks labeled Chicago Firebrick. He also stated that the boxes containing the firebricks indicated that they were made of asbestos, and that he inhaled the dust created when the bricklayers cut the firebricks. As a result, we find that the trial court did not err in finding that the Parkses produced sufficient evidence to create an inference that Mr. Parks inhaled asbestos from Chicago Firebrick's product.

### 3. *Hunter*

The trial court found that the Parkses failed to present sufficient evidence that Hunter employees created "dust from an asbestos containing product, which dust might be inhaled by" Mr. Parks. (R. 1238). The Parkses argue that they presented sufficient evidence to support an inference that Mr. Parks inhaled asbestos produced by Hunter's employees while he worked for another contractor. Specifically, the Parkses argue that Mr. Parks stated in his deposition that Hunter was working at various sites where he was working, and that Hunter's employees were using asbestos products that created dust he inhaled. Hunter argues that the Parkses'

evidence is speculative because Mr. Parks "can recall no specific instances when he worked in the vicinity of Hunter employees while he was working for another contractor." Hunter's Brief at 7.

■ Although Mr. Parks testified that he could not remember the last time Hunter worked at the same site, the designated evidence reveals that Mr. Parks and Hunter employees worked at the Standard Oil refinery in Whiting between 1973 and 1987. The evidence also shows that while Mr. Parks was working at Bethlehem Steel for Combustion Engineering, Hunter was "there permanently." (R. 482). Mr. Parks stated that Hunter was doing repair work, possibly ductwork or insulation repair. He also stated that Hunter's work was performed in close proximity to him and that he inhaled asbestos dust from the Unibestos or Uniroyal insulating blankets. However, other than Mr. Parks' bald assertion, there is no designated evidence showing that the materials used by Hunter's employees contained asbestos. One could logically infer that performing ductwork or insulation repair at Bethlehem Steel between 1973 and 1987 might involve the use of asbestos containing material; however, without any designated evidence to that effect, such an inference would be based on speculation. Therefore, the trial court did not err in granting Hunter's motion for summary judgment.

### 4. *Morrison*

Again, the trial court found that the Parkses failed "to demonstrate an issue of fact as to whether [Mr. Parks] was exposed to asbestos products either manufactured, ... sold, or installed by Morrison while he was employed by others during his career."[5] (R. 1239). The Parkses as-

---

**5.** Mr. Parks did handle asbestos as an employee for Morrison. However, the trial court found that the Indiana Occupational Diseases

Act barred recovery for exposure during that period.

sert that Morrison's employees "were also present at the LTV job site when Mr. Parks was employed by [Calumet Construction]." Parks' Brief at 28. Morrison argues that the Parkses' evidence does not support an inference that Mr. Parks inhaled asbestos produced by Morrison's activities.

 The designated evidence shows that Morrison was working at the LTV steel mill while Mr. Parks was working for Calumet Construction. However, Mr. Parks stated in his deposition that he did not know where Morrison's employees were working or what kind of work they were doing. Therefore, the trial court did not err in finding that there was no evidence that Mr. Parks inhaled asbestos resulting from the activities of Morrison's employees.

## II. *Statute of Repose*

The trial court granted the defendant's motions for summary judgment because it found that the defendants were not miners of asbestos under Ind.Code § 34–20–3–2(d). Therefore, the trial court concluded that because Mr. Parks knew of his exposure when he filed his 1989 complaint in federal court, the Parkses' action in the state court was time barred because they did not commence it within the ten-year statute of repose under Ind.Code § 34–20–3–1.

The Parkses have appealed the trial court's granting of the defendant's motions for summary judgment based on the statute of repose. The Parkses argue that the ten-year statute of repose does not apply to asbestos related actions because the injury may not manifest itself for many more years. Further, they argue that barring their cause of action prevents them from having access to the courts as guaranteed by Art. I, § 12 of the Indiana Constitution, and it creates a class of litigants that have additional privileges and immu-

nities as prohibited by Art I, § 23 of the Indiana Constitution. Additionally, the Parkses argue that the trial court improperly applied the statute of limitations for asbestos-related claims. Specifically, they argue that each newly discovered disease and its cause constitutes a new injury and the basis for a separate cause of action.

In general, product liability actions must be brought within two years after the cause of action accrues or within ten years after the delivery of the product to the initial user or consumer. I.C. § 34–20–3–1. This ten-year limitation period may also be extended another two years if the cause of action accrues at least eight (8) years but less than ten (10) years after the initial delivery. I.C. § 34–20–3–1.

However, an exception to the statute of repose exists for asbestos-related actions. "Specifically, § 34–20–3–2 provides that a product liability action based on personal injury, disability, disease, or death resulting from exposure to asbestos must be commenced within two years after the injured person knows that he or she has an asbestos-related disease, without regard to the ten-year statute of repose." *Black*, 752 N.E.2d, at 151. Additionally, "[this exception] applies only to product liability actions against:

(1) persons who *mined and sold commercial asbestos;* and

(2) funds that have, as a result of bankruptcy proceedings or to avoid bankruptcy proceedings, been created for the payment of asbestos related disease claims or asbestos related property damage claims."

I.C. § 34–20–3–2(d) (emphasis added). We have recently held that "the exception applies to persons who mine commercial asbestos and to persons who sell, but do not mine, commercial asbestos." *Black*, at 151.

In this case, the trial court stated, "It is undisputed that these defendants who have moved for summary judgment based upon the statute of repose were not miners of asbestos." (R. 1240). Our decision in *Black* makes clear that an asbestos-related cause of action can be commenced beyond the ten-year statute of repose if (1) it is brought within two years after the cause of action accrues, and (2) against persons who mine or sell commercial asbestos. As a result, we find herein, that the trial court improperly applied the law and, therefore, erred in granting Chicago Firebrick, Green, and Uniroyal's motions for summary judgment based on the statute of repose. *See Soames v. Young Oil. Co.*, 732 N.E.2d 1236, 1238 (Ind.Ct.App. 2000) ("On appeal, we must determine whether there is a genuine issue of material fact *and* whether the trial court has correctly applied the law.") (emphasis added).

### 1. *Chicago Firebrick*

In response, Chicago Firebrick argues that even if it was a miner or seller of asbestos, the Parkses commenced the instant action more than two years after the cause of action accrued. Specifically, it argues that the Parkses' filing of their 1989 claim in federal court is evidence that Mr. Parks knew of his asbestos exposure. We disagree.

First, the 1989 complaint was not brought against any of the instant defendants. Secondly, the 1989 complaint was based on Mr. Parks' diagnosis of asbestosis;[6] whereas the instant amended complaint alleges that inhaling asbestos proximately caused Mr. Parks' lung cancer. Under I.C. § 34–20–3–2(a), "[t]he subsequent development of an additional asbestos related disease or injury is a new injury and is a separate cause of action." In

late February 1999, a pulmonary specialist told Mr. Park he had lung cancer, and Dr. Suwan made that diagnosis on April 13, 1999. The Parkses had filed the instant complaint on February 24, 1999, and they amended their complaint on September 21, 1999 to include Mr. Parks' lung cancer as damages allegedly suffered as a result of his inhaling the defendants' asbestos. Because lung cancer can be an additional asbestos related disease, we find that the Parkses' cause of action for the lung cancer accrued on April 13, 1999, and would be barred after April 13, 2001. *See* Centers for Disease Control, *Public Health Statement for Asbestos* (August 1995), *available at http://www.atsdr.cdc.gov/ ToxProfiles/phs9004.html* ("Asbestos workers have increased chances of getting two types of cancer: cancer of the lung tissue and mesothelioma, a cancer of the thin membrane that surrounds the lung and other internal organs."). Therefore, the Parkses' amended complaint survives because it was filed within the two-year limitation period under I.C. § 34–20–3–2.

The question that remains is whether Chicago Firebrick, Uniroyal, and Green are miners or sellers of commercial asbestos that was inhaled by Mr. Parks. Chicago Firebrick argues that it was neither a miner nor seller of commercial asbestos. It designated the affidavit of its Treasurer, Curtis Helwig ("Helwig"). Helwig stated, "Chicago Firebrick Company has never been a miner of or had any interest in any asbestos mines at any time." (R. 214). However, Mr. Parks testified that while he was refitting furnaces during the early 1970's, he observed that the bricklayers used firebricks labeled Chicago Firebrick. He also stated that the boxes containing the firebricks indicated that they were made of asbestos, and that

---

**6.** Asbestosis is defined as a "[d]iffuse interstitial pulmonary fibrosis due to the prolonged inhalation of asbestos dust." GOULD MEDICAL DICTIONARY 124 (4th ed. 1979).

he inhaled the dust created when the bricklayers cut the firebricks. As a result, a genuine issue of material fact exists as to whether Chicago Firebrick sold commercial asbestos. The trial court erred in granting summary judgment for Chicago Firebrick.

### 2. *Uniroyal*

Uniroyal also argues that it "never mined and sold commercial asbestos." Uniroyal's Brief at 4. Relying on *Sears Roebuck and Co. v. Noppert*, 705 N.E.2d 1065 (Ind.Ct.App.1999) *trans. denied*, Uniroyal also claims that it never sold "commercial asbestos" within the meaning of I.C. § 34–20–3–2(d). Specifically, Uniroyal argues that *Noppert* prevents the application of section 2 where a defendant merely sells "asbestos containing products, but was not a seller of raw asbestos or products made solely of asbestos." Uniroyal's Brief at 14.

However, *Noppert* is easily distinguished. In that case, Noppert was a former Sears employee who installed boilers for Sears' customers. The issue was whether Noppert's motion to correct errors was timely filed after summary judgment was granted in favor of Sears. We held that the motion was not timely filed and that Noppert did not have a meritorious defense to Sears' motion for summary judgment. Noppert had alleged that his claims should have been allowed to proceed under the statutory exception (that Sears mined and sold commercial asbestos) to the statute of repose. Responding to his argument in dicta, we stated that Sears was not "the actor at whom this exception to the statute of repose for product liability actions was aimed." *Id.* at 1068. Instead, Sears "merely sold products which contained some components composed of asbestos." *Id.*

In this case, the Parkses allege that Uniroyal "manufactured, produced and sold" asbestos products, and they introduced evidence attempting to show that Uniroyal was the type of actor at which section 2 was aimed. (R. 48). Attempting to show that it was not a seller of asbestos, Uniroyal designated the affidavit of its Vice President, General Counsel and Secretary, Robert D'Angelo ("Angelo"), who stated that Uniroyal "did not mine or sell commercial asbestos at any time in its existence." (R. 690). However, Mr. Parks testified that while working at J.R. Kent Heating he recalled seeing yellow Uniroyal blanket insulation. He stated that the insulation blankets came in plastic bags and had "the word asbestos on it." (R. 693). As a result, we find that a genuine issue of fact exists as to whether Uniroyal was a seller of commercial asbestos within the meaning of I.C. § 34–20–3–2(d).

### 3. *Green*

Concerning Green, we note that it has failed to file an appellee's brief. "When an appellee fails to submit a brief, an appellant may prevail by making a prima facie case of error. The prima facie rule protects this court and relieves it from the burden of controverting arguments advanced for reversal, a duty which properly remains with counsel for the appellee." *Washington County Mem. Hosp. v. Hattabaugh*, 717 N.E.2d 929, 931 (Ind.Ct.App. 1999).

In this case, we find that the Parkses have made a prima facie case of error. The trial court found that Green was entitled to summary judgment because they were not miners of asbestos. However, the Parkses argued that our supreme court held that a plaintiff could bring a product liability action within two years after discovering the disease, notwithstanding that the discovery was made more than ten years beyond the limitation imposed by the statute of repose. *Covalt*

*v. Carey Canada, Inc.*, 543 N.E.2d 382 (Ind.1989). Because "one can be injured from prolonged exposure to newly milled and manufactured asbestos just as readily as asbestos which has been on the market" for more than ten years, our supreme court found the statute of repose "inapplicable to cases involving protracted exposure to an inherently dangerous foreign substance which is visited into the body." *Id.* at 385. The supreme court's decision in Covalt served as the basis of our decision in *Black.* There, we noted that it would be illogical for us to strictly limit asbestos actions to those brought against miners of asbestos, but "not include actions against manufacturers and sellers if they did not also mine the product." *Black,* 752 N.E.2d, at 154. The statute of repose is not concerned with the introduction of asbestos into the marketplace, but with exposure to a hazardous substance that causes disease. *Id.* As a result, the trial court improperly applied the law to Green and erroneously granted its motion for summary judgment.

## CONCLUSION

We find that the trial court did not err in denying Chicago Firebricks' motion for summary judgment based on the issue of product identification. We also affirm its granting of B.M.W.'s, Hunter's, and Morrison's motions for summary judgment based on product identification. On the other hand, the trial court did err in granting summary judgment in favor of Chicago Firebrick, Uniroyal, and Green based on the statute of repose. Because we find in favor of the Parkses concerning the statute of repose, we do not address the constitutional and statute of limitations issues raised in their brief. *See General Motors v. Indianapolis Power & Light,* 654 N.E.2d 752 (Ind.Ct.App.1995) (If statute challenged on constitutional grounds, we first seek to dispose of case on non-constitutional grounds).

We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

RILEY, J., and ROBB, J., concur.