**Helen FULK, Administratrix of the Estate of Bert Fulk, deceased, and widow in her own right, Appellant–Plaintiff,**

v.

**ALLIED SIGNAL, INC., A.O. Smith Corp., Armstrong World Ind., Bondex Int'l, Combustion, Engineering, Inc., Garlock, Inc., Harbison Walker Refractories, Owens Corning Fiberglas, U.S. Gypsum, W.A. Pope & Co., and W.R. Grace & Co.–Conn., Appellees–Defendants.**

No. 45A04–0001–CV–8.

Court of Appeals of Indiana.

Oct. 5, 2001.

---

Robert E. Paul, Paul, Reich & Myers, P.C., Philadelphia, PA, Mark K. Dudley, Indianapolis, IN, Attorneys for Appellant.

Michael A. Bergin, Daniel M. Long, Julia Blackwell Gelinas, Locke Reynolds, LLP, Attorneys for Allied Signal, Inc., Armstrong World, U.S. Gypsum & W.A. Pope.

Douglas B. King, John D. Waller, Wooden & McLaughlin, LLP, Attorneys for Bondex International.

Steve D. Hardin, McHale, Cook & Welch, P.C., Indianapolis, IN, Roger E. Podesta, Karin S. Schwartz, DeBevoise & Plimpton, New York, NY, Attorneys for Owens Corning Fiberglas.

Jeffrey Zipes, Cootes Henke & Wheeler, P.C., Carmel, IN, Attorney for W.R. Grace & Co.–Conn.

Christopher D. Lee, Lee F. Baker, Kahn, Dees, Donovan & Kahn, LLP, Evansville, IN, Attorneys for Combustion Engineering.

Knight Anderson, Indianapolis, IN, Attorney for A.O. Smith Corp.

Jason L. Kennedy, Segal, McCambridge, Singer & Mahoney, Chicago, IL, Attorney for Garlock & Harbison–Walker.

W. Russell Sipes, Laudig George Rutherford & Sipes, Indianapolis, IN, Attorney for Indiana Trial Lawyers Association, Attorney for Amici Curiae.

## OPINION

MATTINGLY–MAY, Judge.

Helen Fulk, as widow of Bert Fulk and executrix of his estate, appeals the Lake County Superior Court's grant of summary judgment for multiple defendants in her action for loss of consortium and the wrongful death of her husband.[1]

Fulk raises three issues on appeal, which we consolidate and restate as:

I. Whether Ind.Code § 34–20–3–2, which permits asbestos-related causes of action to be filed within two years of the date they accrue without regard to the ten-year products liability statute of repose contained in Ind.Code § 34–20–3–1, applies to Fulk's claims against the defendants herein;[2] and

II. Whether the trial court properly granted summary judgment for nine of the defendants based on lack of product identification evidence.

We affirm in part, reverse in part, and remand.

## FACTS AND PROCEDURAL HISTORY

Bert Fulk was employed as a construction worker and was exposed to asbestos at various jobsites between 1941 and 1984.

As a result of his exposure to asbestos, Bert Fulk developed lung cancer, which caused his death on October 12, 1998.

On August 16, 1999, Fulk filed an action for wrongful death and loss of consortium against Allied Signal, Inc., A.O. Smith Corp., Armstrong World Industries, Bondex International, Combustion Engineering, Inc., Garlock, Inc., Harbison–Walker Refractories, Owens Corning Fiberglas, U.S. Gypsum, W.A. Pope & Co., and W.R. Grace & Co.-Conn. Each of these defendants moved for summary judgment, and all were ultimately granted summary judgment.[3]

## STANDARD OF REVIEW

Our standard of review for summary judgment appeals is well established. An appellate court faces the same issues that were before the trial court and follows the same process. *Owens Corning Fiberglass Corp. v. Cobb*, 754 N.E.2d 905, 908 (Ind. 2001). The party appealing a summary judgment decision has the burden of persuading the court that the grant or denial of summary judgment was erroneous. *Id.* When a trial court grants summary judgment, we carefully scrutinize that determination to ensure that a party was not improperly prevented from having its day in court. *Id.* Summary judgment is appro-

---

1. We heard oral argument in this case and two companion cases, which were consolidated solely for purposes of the oral argument, on January 31, 2001.

2. Because we find Ind.Code § 34–20–3–2 applies to Fulk's claim, we do not address her alternative assertions that the trial court's interpretation of the ten-year products liability statute of repose violates the Indiana Constitution. *See Martin v. Richey*, 711 N.E.2d 1273, 1285 n. 2 (Ind.1999) (Sullivan, J., concurring) (if reviewing court may resolve a case on non-constitutional grounds, it will not proceed to resolve the constitutional issues presented).

3. The summary judgments for Allied Signal, A.O. Smith, Armstrong, Bondex, Combustion Engineering, Harbison–Walker, U.S. Gypsum, W.A. Pope, and W.R. Grace were granted on the sole ground that Fulk had not demonstrated her husband had been exposed to asbestos provided by those defendants. The court granted the summary judgment motion of Owens Corning on the ground Fulk's claims were filed outside of the ten-year products liability statute of repose codified at Ind.Code § 34–20–3–1. Summary judgment for Garlock was denied on the product identification issue but granted on the statute of repose issue.

priate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). The burden is on the moving party to prove there are no genuine issues of material fact and it is entitled to judgment as a matter of law. Once the movant has met this burden, the opponent must respond by setting forth specific facts showing a genuine issue for trial; he may not simply rest on the allegations of his pleadings. *Stephenson v. Ledbetter*, 596 N.E.2d 1369, 1371 (Ind.1992). When reviewing an entry of summary judgment, we do not weigh the evidence but will consider the facts in the light most favorable to the non-moving party. *Reed v. Luzny*, 627 N.E.2d 1362, 1363 (Ind.Ct. App.1994). We may sustain a summary judgment upon any theory supported by the designated materials. T.R. 56(C).

## DISCUSSION AND DECISION

I. *Application of Ind.Code § 34–20–3–2*

The instant causes of action for wrongful death and loss of consortium were filed within two years of Bert Fulk's death. However, his death occurred more than ten years after the defendants' last deliveries of asbestos-containing products to the sites where he might have been exposed to them. In granting summary judgment in favor of Garlock and Owens Corning, the trial court found that Fulk's claims were barred by the ten-year product liability statute of repose, Ind.Code § 34–20–3–1, because the defendants were not both miners and sellers of commercial asbestos.

Ind.Code § 34–20–3–1 provides that

[A] product liability action must be commenced:

(1) within two (2) years after the cause of action accrues; or

(2) within ten (10) years after the delivery of the product to the initial user or consumer.

However, if the cause of action accrues at least eight (8) years but less than ten (10) years after that initial delivery, the action may be commenced at any time within two (2) years after the cause of action accrues.

Ind.Code § 34–20–3–2 excepts certain asbestos-related actions from section one's ten-year statute of repose. This section defines accrual as the date when the injured person knows that he or she has an asbestos-related disease or injury. Specifically, § 34–20–3–2 provides that a product liability action based on personal injury, disability, disease, or death resulting from exposure to asbestos must be commenced within two years after the injured person knows that he or she has an asbestos-related disease, without regard to the ten-year statute of repose. Under this section,

(d) This ... [exception] ... applies only to product liability actions against:

(1) *persons who mined and sold* commercial asbestos; and

(2) funds that have, as a result of bankruptcy proceedings or to avoid bankruptcy proceedings, been created for the payment of asbestos related disease claims or asbestos related property damage claims.

Ind.Code § 34–20–3–2(d) (emphasis supplied).

■ We recently determined in *Black v. ACandS, Inc.*, 752 N.E.2d 148 (Ind.Ct.App. 2001) that the exception applies to persons who mine commercial asbestos and to persons who sell, but do not mine, commercial asbestos. Therefore, summary judgment for Garlock and Owens Corning on the ground that neither defendant mined and sold commercial asbestos was improper. We accordingly reverse the trial court's

grant of summary judgment for Garlock and Owens Corning to the extent the judgments were premised on the application of the statute of repose and the trial court's determination the exception in Ind.Code § 34–20–3–2 did not apply.

## II. Evidence[4] of Product Identification

■ In its grant of summary judgment for all defendants except Owens Corning, the trial court also addressed whether Fulk had come forth with evidence sufficient to support an inference her husband had been exposed to asbestos fiber or dust from a defendant's product. To avoid summary judgment, a plaintiff must produce evidence sufficient to support an inference that he inhaled asbestos dust from the defendant's product. *Peerman v. Georgia–Pacific Corp.*, 35 F.3d 284, 287 (7th Cir.1994) (applying Indiana

law).[5] This inference can be made only if it is shown the product, as it was used during the plaintiff's tenure at the job site, could possibly have produced a significant amount of asbestos dust and that the plaintiff might have inhaled the dust. *Id.* Fulk's product identification evidence with regard to these defendants was at best conjectural and insufficient to support the inference the decedent inhaled dust from any of the defendants' products, and we therefore cannot say the trial court erred in granting summary judgment for these defendants on that basis.

### 1. Allied Signal

■ Allied Signal manufactured Bendix brake products, some of which contained asbestos. As evidence her husband might have been exposed to asbestos from those products,[6] Fulk designated testimony by

**4.** We note that many of the record references Fulk's counsel offers us in support of Fulk's product identification arguments are to counsel's own memoranda in opposition to the various summary judgment motions. Therefore, those record references direct us to no "evidence" the various defendants provided asbestos products to which Bert Fulk might have been exposed. It is axiomatic that the arguments of counsel are not evidence. *Wilkerson v. State*, 728 N.E.2d 239, 244 (Ind.Ct. App.2000). We remind counsel that a brief should not only present the issues to be decided on appeal, but it should be of material assistance to the court in deciding those issues. On review, we will not search the record to find a basis for a party's argument. *Young v. Butts*, 685 N.E.2d 147, 151 (Ind.Ct. App.1997).

**5.** The *Peerman* court noted that neither this court nor our supreme court had enumerated a test for causation in asbestos cases. 35 F.3d at 286. In *Cobb* our supreme court recently found the trial court properly denied Owens Corning's motion for summary judgment. The *Cobb* court did not articulate a standard for evidence sufficient to overcome summary judgment in asbestos cases, but noted Cobb offered evidence he was exposed to Owens Corning's asbestos products while he

worked as a pipe fitter for a school system. There was evidence Cobb worked at multiple sites where the products were being used, he saw boxes of the product at some of the sites, he worked near people who were installing the product, and he was exposed to asbestos when he removed pipe covering:

> While Owens Corning succeeded in identifying areas of uncertainty in the record, they did not show that Cobb would not be able to prove causation ... We find it to be a reasonable inference, not conjecture or speculation, that the insulation from the Kaylo boxes was being installed at the worksites where it was present and not simply being stored there.

*Id.* at 910.

**6.** Fulk asserts in her brief that one of her husband's co-workers "testified that he remembered Bendix asbestos products, including sheets and brake shoes" at some of the job sites where Bert Fulk worked. (Br. of Appellant Helen Fulk at 28.) The record does not support that assertion. The testimony Fulk characterizes as evidence her husband was exposed to Bendix asbestos products in "sheet" form was the following: "I'm going to tell you this, we used Gray Lock, we used Raybestos, we had Bendex products. We had

one of her husband's co-workers that Bendix brake shoes were used in "tuggers," portable cranes used to raise material in a boiler. The trial court noted Allied Signal's affidavit that it never manufactured or sold brake products that would be used on that type of equipment, and the co-worker did not testify that Bert Fulk was present when the brake shoes were replaced on the tuggers. As Fulk directs us to no evidence that her husband might have been exposed to asbestos supplied by Allied Signal, we cannot say the trial court's grant of Allied Signal's summary judgment motion was error.

### 2. *Armstrong*

■ As evidence the decedent was exposed to Armstrong products, Fulk offers testimony by one of Bert Fulk's co-workers that he remembered Armstrong "asbestos block"[7] in the area where he had worked with Bert Fulk, and he testified the block produced dust when it was cut. The co-worker did not testify that Bert Fulk was present on any occasion when the block was cut.

Another co-worker testified that he saw Armstrong asbestos pipe covering at a number of jobs where he and Bert Fulk worked, but that he could not "pinpoint" Bert Fulk at any particular job where the

pipe covering was used. (R. at 392.) The co-worker also testified he thought Armstrong manufactured the pipe covering in question not because he saw the name Armstrong on it, but because "Armstrong is well known." *Id.* We cannot say the trial court erred to the extent it granted summary judgment to Armstrong based on a lack of product identification evidence.

### 3. *A.O. Smith*[8]

■ Two of Bert Fulk's co-workers testified that Bert Fulk was exposed to dust from A.O. Smith pipe covering and cement products. Neither co-worker testified that either of those products contained asbestos,[9] and A.O. Smith submitted an affidavit to the effect that it manufactured boilers and never pipe covering or cement products. Based on an absence of product identification evidence, we cannot say the trial court erred in granting summary judgment for A.O. Smith.

### 4. *Bondex*

■ Fulk argues summary judgment for Bondex was improper because there was testimony that "Bondex *asbestos* cement created dust when it was poured out of a bag for mixing. Mr. Fulk was present when this was done." (Br. of Appellant Helen Fulk at 30) (emphasis supplied). Fulk goes on to assert that "Bondex did

one outfit that made sheets like asbestos cloth." (R. at 1154.) We decline to find that this testimony gives rise to a genuine issue of material fact as to whether Bendix provided asbestos in sheet form to which Bert Fulk could have been exposed.

7. Armstrong offered evidence that it manufactured only two asbestos-containing products during the time period in question, neither of which was in "block" form.

8. A motion to admit out-of-state counsel for A.O. Smith *pro hac vice* was filed on March 2, 2001. The motion was denied and the A.O. Smith brief ordered stricken on March 16,

2001. On March 22, 2001, local counsel for A.O. Smith moved to substitute an amended appellee's brief. We deny the motion.

9. Fulk's counsel mischaracterizes the co-workers' testimony as addressing "A.O. Smith *asbestos* pipecovering" and "A.O. Smith *asbestos* cement." (Br. of Appellant Helen Fulk at 29) (emphasis supplied). This mischaracterization of the testimony is particularly offensive because it might, if true, directly affect the propriety of the trial court's grant of summary judgment. We remind counsel that we have imposed sanctions for similar mischaracterizations of the record. *E.g., Young,* 685 N.E.2d at 151.

not deny that this is the kind of asbestos product that it made." *Id.*

Fulk's counsel has again mischaracterized the record. The testimony to which Fulk directs us nowhere indicates the Bondex product in question contained asbestos. The trial court so noted in its summary judgment order; yet Fulk's counsel continues to assert on appeal, without explanation or record reference, that Bondex supplied "asbestos" cement. Because Fulk has not set forth specific facts showing a genuine issue for trial on the ground Bert Fulk was exposed to any asbestos-containing product supplied by Bondex, we find summary judgment for Bondex was proper.

### 5. *Combustion Engineering*

 Fulk asserts the testimony of two of Bert Fulk's co-workers provided evidence sufficient to create a genuine issue of material fact that Bert Fulk was exposed to "Combustion Engineering ("CE") asbestos on CE boilers." *Id.* The testimony to which Fulk directs us indicates Bert Fulk worked on boilers supplied by Combustion Engineering. However, that testimony makes no mention of asbestos in connection with the boilers, and Fulk directs us to no other evidence linking the boilers to asbestos[10] to which Bert Fulk might have been exposed. We accordingly find summary judgment for Combustion Engineering was proper.

### 6. *Harbison–Walker*

 Fulk points to testimony she characterizes as "plac[ing] Fulk in the blast furnace at U.S. Steel–Gary in both 1959 (R. 1491) and 1974–75(R. 1492)." *Id.* She then directs us to testimony from a case brought by a different plaintiff to the effect that Harbison–Walker asbestos block was used in the blast furnaces at U.S. Steel–Gary. The first record reference to which Fulk directs us includes testimony that Bert Fulk "was on the job" there, but that "Bert was kind of lost in the shuffle. I don't know where he was working or what he was doing." (R. at 1491.) The second record reference does not include testimony that Bert Fulk worked at a U.S. Steel blast furnace. Even if we accept Fulk's assertions that Bert Fulk worked at a U.S. Steel blast furnace where Harbison–Walker asbestos block was used, the record is devoid of evidence that Bert Fulk might have been exposed to asbestos dust from the Harbison–Walker product. Summary judgment for Harbison–Walker was therefore proper.

### 7. *W.R. Grace*

 As evidence Bert Fulk was exposed to asbestos provided by W.R. Grace, Fulk asserts a co-worker testified Bert Fulk was on the job when a Grace asbestos product was mixed. Fulk does not favor us with a record reference to any such testimony. However, our independent review of the record reveals testimony that a product the witness called "Zonite" was mixed on one occasion when Bert Fulk was "on the job." (R. at 267.) Grace manufactured a product called "Zonolite." The witness testified that he did not know whether Bert Fulk was present at the place and time the "Zonite" was mixed. A Grace employee testified asbestos is removed from Zonolite in the milling process, and the product would be virtually asbestos-free unless contaminated. We

---

**10.** Fulk asserts, without argument or explanation, that the trial court improperly excluded certain invoices that showed the sale of asbestos products to Combustion Engineering. We will not consider bald assertions made in an appellate brief in deciding whether there is conflicting evidence sufficient to preclude summary judgment. *Young,* 685 N.E.2d at 149.

therefore decline to adopt Fulk's assertion that "[t]here is no dispute that W.R. Grace is responsible for injuries due to exposure to Grace's Zonolite asbestos product," (Br. of Appellant Helen Fulk at 31), and we find summary judgment was properly granted.

### 8. *W.A. Pope*

■ Fulk asserts the decedent was exposed to asbestos from gaskets Pope supplied, and she offers as evidence testimony by two of Bert Fulk's co-workers. One testified he remembered being around Bert Fulk at a jobsite where Pope employees were using asbestos products, but that he and Bert Fulk did not work in the same section, he did not know what Bert Fulk was doing on that job, and he did not know how close Fulk was to the Pope employees.

Fulk characterizes testimony by a second co-worker as showing "he and Mr. Fulk worked together when Pope employees punched holes in asbestos gaskets, and this created dust, which [the co-worker] and Mr. Fulk inhaled." (*Id.*) The record does not support this characterization. The testimony to which Fulk directs us nowhere states Bert Fulk "inhaled" dust from the gaskets. Rather, the testimony by a co-worker who remembered Bert Fulk from only one jobsite sometime in 1969 or 1970, was that *if* the Pope employees connected sections of pipe, "they had to use the asbestos gasket." (R. at 1671.) *If* the gaskets did not fit, the Pope workers would have to punch holes in the gaskets, and dust would be produced. If pipes were connected, the gaskets did not fit, and holes were punched in the gaskets, the co-worker testified, Fulk would be exposed to the dust. It is apparent from the testimony that the co-worker was discussing a hypothetical situation and not an actual incident; accordingly, we cannot say summary judgment for Pope was error.

### 9. *U.S. Gypsum*

■ Finally, Fulk asserts summary judgment for U.S. Gypsum was error because there was conflicting evidence from a co-worker about Bert Fulk's exposure to U.S. Gypsum asbestos products. Fulk does not explain what that evidence was, offer record references, or explain why the asserted conflicts give rise to a genuine issue of material fact. She has accordingly waived that allegation of error. *See Young*, 685 N.E.2d at 150 (assertions not supported by cogent argument, legal authority, and references to the record will not be considered on appeal).

Notwithstanding the waiver, summary judgment for U.S. Gypsum was not error. A co-worker testified that dust would be formed when "asbestos slabs from U.S. Gypsum" were sawed. (R. at 396.) However, the co-worker had no specific memory that Bert Fulk was present when the slabs were being worked on, and he could not testify that the slabs being worked on when Bert Fulk was present were a U.S. Gypsum product. The trial court properly granted summary judgment for U.S. Gypsum.

### CONCLUSION

We reaffirm our holding in *Black* that the exception contained in Ind.Code § 34–20–3–2 to the ten-year product liability statute of repose applies to claims against miners of commercial asbestos and against sellers of commercial asbestos, even if those sellers do not also mine the product. Therefore, Fulk's claims against those defendants who are sellers but not miners of commercial asbestos are not barred by the ten-year statute of repose in Ind.Code § 34–20–3–1, and we accordingly reverse the summary judgments in favor of Garlock and Owens Corning. We affirm the trial court's grant of summary judgment for defendants Allied Signal, Armstrong,

A.O. Smith, Bondex, Combustion Engineering, Harbison–Walker, W.R. Grace, W.A. Pope, and U.S. Gypsum, as Fulk failed to demonstrate a genuine issue of material fact as to whether the decedent was exposed to asbestos manufactured or installed by those defendants.

Affirmed in part, reversed in part, and remanded.

ROBB, J., concurs.

MATHIAS, J., dissenting with opinion.

MATHIAS, J., dissenting.

In *Black v. ACandS, Inc.,* 752 N.E.2d 148 (Ind.Ct.App.2001), I dissented on the basis that Indiana Code section 34–20–3– 2(d) unambiguously applies only to those who "mined and sold" commercial asbestos. *Id.* at 159. Moreover, I concluded that neither Indiana Code section 34–20–3–1 nor 34–20–3–2(d) violated certain provisions of the Indiana Constitution. *Id.* at 161–62. For the same reasons expressed in *Black,* I respectfully dissent in this case and would affirm the trial court's grant of summary judgment.